**Jim Eugene FOY, Appellant,**

v.

**V. Lee BOUNDS, Director of North Carolina Department of Correction, Appellee.**

**No. 72–1003.**

United States Court of Appeals, Fourth Circuit.

Argued Dec. 8, 1972.

Decided June 20, 1973.

——◆——

Professor Ralph S. Spritzer, University of Pennsylvania School of Law, Philadelphia, Pa. (Norman B. Smith and Smith, Patterson, Follin & Curtis, Greensboro, N. C., on brief), for appellant.

Jacob L. Safron, Asst. Atty. Gen., (Robert Morgan, Atty. Gen., on brief), for appellee.

Before HAYNSWORTH, Chief Judge, BOREMAN, Senior Circuit Judge, and WINTER, Circuit Judge.

HAYNSWORTH, Chief Judge:

In this habeas corpus case, the prisoner complains that he was not afforded the right of confrontation of adverse witnesses in his North Carolina probation revocation hearing. While the right of confrontation was not afforded, under the circumstances of this case, we find no denial of due process.

Foy had been convicted in North Carolina of a "crime against nature," and a suspended sentence had been imposed upon him. He was placed on probation, one of the general conditions being that he abide by all applicable laws, and a special condition being that he submit to treatment by a psychiatrist who should file monthly reports with the probation officer.

Foy obtained permission to return to Ohio, where he previously had lived, and the Ohio probation authorities agreed to provide supervision of him. Foy moved into an apartment in the home of a Mennonite minister in the rural community of Sugercreek, Ohio, inhabited largely by Amish and Mennonite people.

In less than a year the supervising Ohio probation officer filed a report with the North Carolina officials, in which he detailed reports by a number of young boys of homosexual assaults upon them by Foy. The report also contained information that Foy had not been consulting the psychiatrist to whom the Ohio authorities had referred him. The report indicated that the parents of the young boys found the matter embarrassing to them, and to their children, and were not inclined to have their sons appear in open court as prosecution witnesses. The report concluded with a request that the North Carolina probation officials institute probation revocation proceedings in that state.

A warrant, incorporating the charges against him, was issued under which Foy was returned to North Carolina. A lawyer was appointed to represent him, and he was permitted to examine the Ohio report and all correspondence between probation officers in Ohio and North Carolina. A hearing was then held before a judge of the Superior Court.

At the hearing, a North Carolina probation officer submitted a report incorporating the report which had been received from Ohio. The Ohio report indicated that Foy had admitted to the Ohio probation officials some of the offenses with which he was charged, and attached to it was a statement signed by Foy describing one of those assaults. All of this was submitted to the judge without objection by Foy or his lawyer. Foy then elected not to testify. At no time did he do anything to deny the charges made against him or the

hearsay information submitted to the North Carolina judge. The hearing thus concluded, an order was entered finding that Foy had violated the terms of his probation by committing one of the assaults with which he had been charged, and his probation was revoked.

Foy took no appeal from the revocation order, but later he sought collateral relief in the state court and was unsuccessful. He then sought habeas corpus in the district court, and has brought this appeal from its denial there.

Within recent weeks, the Supreme Court in Gagnon v. Scarpelli, 411 U.S. 778, 93 S.Ct. 1756, 36 L.Ed.2d 656 announced due process standards governing probation revocation hearings. In effect, the Court adopted standards enunciated earlier for parole revocation hearings in Morrissey v. Brewer, 408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 484. Except that there was no preliminary hearing in Ohio to determine probable cause for a later full revocation hearing, and with the possible exception of the matter of confrontation, to be discussed presently, Foy's hearing abundantly complied with all of the due process requirements. The warrant gave him written notice of the conduct with which he was charged as violating the terms of his probation. There was full disclosure of all of the evidence against him, and the entire file was opened to his lawyer. The hearing was before an impartial trial judge, who filed a written opinion stating his findings of fact upon which he based the revocation order.

Though the Supreme Court concluded that appointment of counsel for an indigent probationer was not necessary in every probation revocation proceeding, Foy had an appointed lawyer, so there is no possible problem on that score.

This revocation hearing was held in 1970, long before Gagnon's requirement of a preliminary hearing in probation revocation cases. Gagnon's conclusion may have been foreshadowed by Morrissey's holding in 1972 that a preliminary hearing was required in parole revocation hearings, but that, too, was long after Foy's hearing. The Court in Morrissey explicitly said [1] that its requirements are "applicable to future revocations of parole," and the whole tone of the opinion is prospective. This does not necessarily mean that some earlier probation revocations may be found invalid for want of basic fairness, but the opinions can hardly be read to require a retroactive application of the requirement of a preliminary hearing to a case in which a full revocation hearing was held promptly, counsel was provided the probationer and findings, supported by the record, were made of actual violations of the conditions of probation. The absence of an earlier preliminary hearing in Ohio before an impartial officer, not necessarily a judicial one, would have provided immediate assurance against inappropriate recommendations by an over-zealous supervising probation officer, but the absence of such a hearing hardly can be said to have infected the integrity of the factfinding process in the North Carolina hearing.

We need not here consider whether the confrontation requirement should be retroactively applied in a case in which denial of a right of confrontation worked patent unfairness, for, while the young boys were not presented as witnesses, subject to cross examination, we think there was substantial compliance with the new requirement.

The case for revocation of Foy's probation was largely made by the introduction of the report from the Ohio probation officer. The officer was not present, so his report was hearsay, and included in the report was some information the probation officer had obtained from a fellow probation officer, so the report was in part hearsay on hearsay. It was supported in part, however, by a report of Foy's verbal admissions and in part by a handwritten paper, signed by him, in which he fully described one of the assaults. That state-

---

1. 408 U.S. 490, 92 S.Ct. 2604.

ment contains a recital that he had been advised of his "Meranda" (sic) rights.

Though the typewritten report would not have been admissible against him in a criminal proceeding, *Morrissey* made it clear that the parole revocation hearing was not to be equated with a criminal prosecution. The Court specifically said [2] that the hearing officer could consider "evidence, including letters, affidavits and other material that would not be admissible in an adversary criminal trial." That has been the traditional rule and the one prevailing in North Carolina [3] and in the Fourth Circuit.[4]

There was thus no violation of the new standards in the receipt of the Ohio report, but the right of confrontation which *Morrissey* and *Gagnon* provide must mean that on demand by Foy the victims of the alleged assaults should have been presented for cross examination, either in Ohio or in North Carolina, unless, as the right of confrontation is limited, "the hearing officer specifically finds good cause for not allowing confrontation." There was no specific finding by the judge of the Superior Court in this case of good cause for not allowing confrontation but there had been no request for confrontation, and *Morrissey* and *Gagnon* had not been written to tell him what to do.

The failure of Foy and his lawyer to object at the time of the hearing, or to request production of the victims of the alleged assaults for cross examination, may have been a waiver of whatever right of confrontation Foy had, but surely his failure to deny in any way the charges against him furnished good reason for not producing these young boys for cross examination in the face of the reported embarrassment of them and their parents. Revocation hearings are designed as informal proceedings, not as adversary criminal prosecutions. Foy had a right to say nothing, but in a revocation proceeding he hardly has a right to complain that witnesses of tender years were not brought a great distance to present testimony on factual issues which were not controverted. There is nothing in the record to indicate that he ever questioned the accuracy of any detail of the assaults described in the Ohio report and, of course, he never disclaimed his own written description of one of them. Now, in these collateral proceedings, Foy should not be heard to complain of a lack of confrontation, he did not request, of witnesses, whose reported statements he did not dispute.

For these reasons, we find no essential unfairness in the revocation proceeding and no substantial violation of the standards of *Morrissey* or *Gagnon* to the extent that those standards may be retroactively applied.

Affirmed.

2. 408 U.S. 489, 92 S.Ct. 2604.

3. State v. Duncan, 270 N.C. 241, 154 S.E. 2d 53 (1967).

4. United States v. Cates, 4 Cir., 402 F.2d 473.