312 So.2d 620

**In re W. C. ARMSTRONG, Jr.**

**v.**

**STATE of Alabama.**

**Ex parte W. C. Armstrong, Jr.**

**SC 1046.**

Supreme Court of Alabama.

March 13, 1975.

Rogers, Howard, Redden & Mills, Birmingham, for petitioner.

William J. Baxley, Atty. Gen., and David W. Clark, Asst. Atty. Gen., for the State, respondent.

**PER CURIAM.**

The following portion of this opinion was prepared for the court by Mr. Justice Faulkner, to whom this case was originally assigned.

**I.**

Petitioner appealed to the Court of Criminal Appeals from an order of the Circuit Court revoking his probation. The Court of Criminal Appeals affirmed, 54 Ala.App. ——, 312 So.2d 607. We granted certiorari.

In February, 1971, Armstrong was found guilty of various crimes against property. He was placed on seven years probation by a Circuit Judge of Tuscaloosa County. In July, 1973, he was indicted in Tuscaloosa County for two cases of robbery, conspiracy to rob, and kidnaping. On November 15, 1973, Armstrong's probation officer issued an order for his arrest for violation of his probation. Armstrong was arrested four days later, on November 19, and a probation revocation hearing was held. On that date just before the hearing Armstrong was given a copy of the report of the probation officer. Armstrong says this was the only written notice he was given concerning the alleged grounds for revocation.

Before any evidence was presented at the hearing, Armstrong moved that he be

granted a two stage hearing. By this he meant a preliminary hearing where he would be apprised of the allegations in the probation officer's report, and a later hearing so that he could meet those charges, and at such hearing, a final determination could be made as to his continued status as a probationer. The court overruled the motion.

The State introduced evidence consisting of the testimony of two principals to the robbery in Tuscaloosa County, committed on June 2, 1972. These witnesses testified that Armstrong was not a participant in the robbery, but he did take a major part in the planning and execution of the crime. Testimony of two probation officers, and the victim of the robbery was introduced by the State. The victim testified that Armstrong was not one of the persons who robbed him. The probation report was introduced. At the conclusion of the hearing Armstrong's probation was revoked.

The principal issue in this case is whether the hearing conducted in the Circuit Court of Tuscaloosa County was in compliance with the guidelines set out by the United States Supreme Court in Morrissey v. Brewer, 408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972) and Gagnon v. Scarpelli, 411 U.S. 778, 93 S.Ct. 1756, 36 L.Ed.2d 656 (1973). *Morrissey* held that even though the revocation of parole was not a part of the criminal prosecution, the loss of liberty entailed was a serious deprivation and required the parolee be accorded due process. *Gagnon* applied the principles outlined in *Morrissey* to revocation of probation, holding that a probationer was entitled to a preliminary and a final revocation hearing under the conditions specified in *Morrissey*. Those conditions included the following:

1. Written notice of the claimed violation of parole.

2. Disclosure to parolee of evidence against him.

3. Opportunity to be heard in person and to present witnesses and documentary evidence.

4. The right to confront and cross-examine adverse witnesses.

5. A neutral and detached hearing body, such as a parole board.

6. A written statement by the judge as to evidence relied on and reasons for revoking parole.

*Gagnon* expanded these to include right of counsel under certain conditions.

The court said that it was not trying to write a code of procedure for each state, but felt that the minimum requirements of due process included the above.

In this case, the Court of Criminal Appeals seemingly reasoned that minimal due process had been met because of an affidavit filed by the trial judge. In the affidavit, the trial judge outlined a telephone conversation with Armstrong's attorney on November 15, 1973. No explanation was given in the affidavit why there was such a lapse between the time of the indictment and the efforts of the District Attorney to have Armstrong's probation revoked. The affiant merely stated he refused to take any action at the request of the District Attorney, and stated to the D. A. he would "await the probation officer." It was not until after the trial judge was requested by the probation officer, that the order of delinquency was entered. No hearing was held prior to the entry of that order. We disagree with the Court of Criminal Appeals in its conclusion that minimal due process was accorded Armstrong before revoking his probation.

■ We set forth the requirements and guidelines which must be met for minimal due process to be accorded the probationer under *Morrissey* and *Gagnon* before his probation can be revoked.

1. Written notice to the probationer of the claimed violations of probation.

2. Disclosure to the probationer of evidence against him or her.

3. Opportunity of probationer to be heard in person and to present witnesses and documentary evidence.

4. The right to confront and cross-examine adverse witnesses (unless the judge specifically finds good cause for not allowing confrontation).

5. A written statement by the judge as to the evidence relied on and reasons for revoking probation.

6. The trial judge who granted probation may also conduct the revocation hearing. (We are not convinced that a detached and neutral judge should hold a revocation hearing. Judges preside over retrials. There appears to be no sound reason why the judge who granted probation could not fairly and impartially preside over revocation of probation hearing.)

7. We see no valid reason for having two hearings if the probationer has been given sufficient notice of the charges and the evidence to be relied on for revocation of probation. If the probationer has not had time to prepare to refute the charges and evidence against him, he can have a timely continuance.

8. The judge conducting the probation hearing should decide on a case by case basis whether due process requires that an indigent probationer be represented by counsel.[1]

9. It is not to be understood that proof beyond a reasonable doubt or the preponderance of the evidence are the standards to be applied in determining whether the probation should be revoked. The trial judge must only be reasonably satisfied from the evidence that the probationer has violated the conditions of his probation. Fiorella v. State, 40 Ala.App. 587, 121 So.2d 875 (1960).

For the reason that the probationer has not been accorded minimal due process, the Court of Criminal Appeals is reversed. The case is due to be remanded for a hearing in conformance with the due process requirements outlined in this part of the opinion.

Finally, should the probation be revoked upon another hearing, then the time already spent in the penitentiary must be fully credited against the probationer's sentence.

The following portion of this opinion was prepared for, and at the request of, the Court by Bloodworth, Justice.

---

1. The minimum constitutional requirements of due process for appointment of counsel (an issue not involved in this case) may be found in *Gagnon*, supra, at 411 U.S. p. 790, 93 S.Ct. p. 1763:

"Although the presence and participation of counsel will probably be both undesirable and constitutionally unnecessary in most revocation hearings, there will remain certain cases in which fundamental fairness—the touchstone of due process—will require that the State provide at its expense counsel for indigent probationers or parolees.

"It is neither possible nor prudent to attempt to formulate a precise and detailed set of guidelines to be followed in determining when the providing of counsel is necessary to meet the applicable due process requirements. The facts and circumstances in preliminary and final hearings are susceptible of almost infinite variation, and a considerable discretion must be allowed the responsible agency in making the decision. Presumptively, it may be said that counsel should be provided in cases where, after being informed of his right to request counsel, the probationer or parolee makes such a request, based on a timely and colorable claim (i) that he has not committed the alleged violation of the conditions upon which he is at liberty; or (ii) that, even if the violation is a matter of public record or is uncontested, there are substantial reasons which justified or mitigated the violation and make revocation inappropriate and that the reasons are complex or otherwise difficult to develop or present. In passing on a request for the appointment of counsel, the responsible agency also should consider, especially in doubtful cases, whether the probationer appears to be capable of speaking effectively for himself. In every case in which a request for counsel at a preliminary or final hearing is refused, the grounds for refusal should be stated succinctly in the record."

## II.

The second issue raised by petitioner is whether a person's probation may be revoked on the uncorroborated testimony of accomplices. The Court of Criminal Appeals concluded that, although a felony conviction cannot be had thereon [Tit. 15, § 307], a person's probation may be revoked upon such testimony. We agree and affirm as to this issue.

It is contended that evidence sufficient to revoke probation must measure up to the same standard required to bind a person over to the grand jury, citing State v. Smith, 138 Ala. 111, 35 So. 42 (1902).

■ In the first place, we do not concede that the *Smith* case is applicable. It holds that our statute [Tit. 15, § 307] applies to preliminary hearings as to "probable cause" as well as to grand jury proceedings. No authority is cited for this holding except the statute, and, of course, it applies to trials where a conviction may be had. Such case is clearly inefficacious to produce a result different from that which we espouse.

This Court has held that this "section [Tit. 15, § 307] merely creates a statutory rule, and not a constitutional right." Alexander v. State, 281 Ala. 457, 204 So.2d 488 (1967).

■ *Gagnon,* itself, specifically holds that "formal procedures and rules of evidence are not employed" in probation revocation hearings. Justice Faulkner in writing this Court's opinion as to issue I specifically notes that, on revocation hearings, the standard of proof *is* not reasonable doubt or preponderance of the evidence but *reasonable satisfaction from the evidence.*

■ As the Court of Criminal Appeals notes in its opinion:

"In Martin v. State, 46 Ala.App. 310, 241 So.2d 339, Judge Cates, quoting from State v. Duncan, 270 N.C. 241, 154 S.E. 2d 53, stated:

" ' " . . . A proceeding to revoke probation is not a criminal prosecution, and we have no statute requiring a formal trial. *Upon a hearing of this character, the court is not bound by strict rules of evidence,* and the alleged violation of a valid condition of probation need not be proven beyond a reasonable doubt . . . " ' " [Emphasis supplied.] Armstrong v. State (1974), 55 Ala.App. 37, 312 So.2d 607.

The United States Supreme Court, in several very recent decisions, has written that there is a great difference between the rules governing probable cause hearings for arrest and search, grand jury proceedings, and those governing the trial itself.

" * * * it should be recalled that the rules of evidence normally applicable in criminal trials do not operate with full force at hearings before the judge to determine the admissibility of evidence. In Brinegar v. United States, 338 U.S. 160, 69 S.Ct. 1302, 93 L.Ed. 1879 (1949), it was objected that hearsay had been used at the hearing on a challenge to the admissibility of evidence seized when a car was searched and that other evidence used at the hearing was held inadmissible at the trial itself. The Court sustained the trial court's rulings. It distinguished between the rules applicable to proceedings to determine probable cause for arrest and search and those governing the criminal trial itself—'There is a large difference between the two things to be proved, as well as between the tribunals which determine them, and therefore a like difference in the quanta and modes of proof required to establish them.' * * *" (Footnotes omitted.) United States v. Matlock, 415 U.S. 164, 94 S.Ct. 988, 39 L.Ed.2d 242 (1974).

The United States Supreme Court in *Matlock* continued by writing:

"Search warrants are repeatedly issued on ex parte affidavits containing out-of-court statements of identified and uni-

dentified persons. United States v. Ventresca, 380 U.S. 102, 108, 85 S.Ct. 741, 745, 13 L.Ed.2d 684 (1965). An arrest and search without a warrant were involved in McCray v. Illinois, 386 U.S. 300, 87 S.Ct. 1056, 18 L.Ed.2d 62 (1967). At the initial suppression hearing, the police proved probable cause for the arrest by testifying to the out-of-court statements of an unidentified informer. The Government would have been obligated to produce the informer and to put him on the stand had it wanted to use his testimony at defendant's trial, but we sustained the use of his out-of-court statements at the suppression hearing, as well as the Government's refusal to identify him. * * *

"There is, therefore, much to be said for the proposition that in proceedings where the judge himself is considering the admissibility of evidence, the exclusionary rules, aside from rules of privilege, should not be applicable; and the judge should receive the evidence and give it such weight as his judgment and experience counsel. * * *" (Footnotes omitted.)

In United States v. Calandra, 414 U.S. 338, 94 S.Ct. 613, 38 L.Ed.2d 561 (1974), the court wrote:

"Traditionally the grand jury has been accorded wide latitude to inquire into violations of criminal law. No judge presides to monitor its proceedings. It deliberates in secret and may determine alone the course of its inquiry. The grand jury may compel the production of evidence or the testimony of witnesses as it considers appropriate, and its operation generally is unrestrained by the technical procedural and evidentiary rules governing the conduct of criminal trials. * * *"

*     *     *     *     *     *

"In Branzburg [Branzburg v. Hayes, 408 U.S. 665, 92 S.Ct. 2646, 33 L.Ed.2d 626], the Court had occasion to reaffirm the importance of the grand jury's role:

" '[T]he investigation of crime by the grand jury implements a fundamental governmental role of securing the safety of the person and property of the citizen . . . .' 408 U.S., at 700 [92 S.Ct. at 2666] 33 L.Ed.2d 626."

*     *     *     *     *     *

" ' *  *  * Such an investigation may be triggered by tips, rumors, evidence proffered by the prosecutor, or the personal knowledge of the grand jurors. Costello v. United States, supra, 350 U.S., at 362 [76 S.Ct. at 408] [(100 L.Ed. 397)]. It is only after the grand jury has examined the evidence that a determination of whether the proceeding will result in an indictment can be made . . . .' Id., at 701–702, [92 S.Ct. at 2666] 33 L.E.2d 626.

"The grand jury's sources of information are widely drawn, and the validity of an indictment is not affected by the character of the evidence considered. Thus, an indictment valid on its face is not subject to challenge on the ground that the grand jury acted on the basis of inadequate or incompetent evidence, Costello v. United States, supra [350 U.S. 359, 76 S.Ct. 406, 100 L.Ed. 397]; Holt v. United States, 218 U.S. 245, 31 S.Ct. 2, 54 L.Ed. 1021 (1910); or even on the basis of information obtained in violation of a defendant's Fifth Amendment privilege against self-incrimination, Lawn v. United States, 355 U.S. 339, 78 S.Ct. 311, 2 L.Ed.2d 321 (1958)."

Moreover, our Court of Criminal Appeals has consistently held that an indictment may rest on hearsay. Pitts v. State, 53 Ala.App. 373, 300 So.2d 416 (1974), cert. den. 293 Ala. 770, 300 So.2d 420; State ex rel. Baxley v. Strawbridge, 52 Ala.App. 685, 296 So.2d 779 (1974), cert. denied in opinion 292 Ala. 506, 296 So.2d 784. See also Dixon v. State, 42 Ala.App. 341, 164 So.2d 509 (1964); Douglas v. State, 42 Ala.App. 314, 163 So.2d 477 (1963).

*Conclusions*

■ In conclusion, we hold as to Part I that petitioner Armstrong was not awarded "minimal due process" under the United States Supreme Court decisions in Gagnon v. Scarpelli and Morrissey v. Brewer and that the decision and judgment of the Court of Criminal Appeals is reversed as to this issue (Part I) and the cause remanded for a hearing in conformity with the due process requirements which we have heretofore set forth.

In conclusion, we hold as to Part II that, in probation revocation proceedings, the testimony of accomplices need not be corroborated [as required by Tit. 15, § 307 for convictions] in order to warrant a revocation of probation by a trial judge and the decision and judgment of the Court of Criminal Appeals is affirmed as to this issue (Part II).

Affirmed, in part, reversed, in part, and remanded.

HEFLIN, C. J., and MERRILL, BLOODWORTH, FAULKNER, JONES, SHORES and EMBRY, JJ., concur in Part I.

MADDOX, J., concurs specially in Part I.

HEFLIN, C. J., and MERRILL, BLOODWORTH, MADDOX and SHORES, JJ., concur in Part II.

FAULKNER, JONES and EMBRY, JJ., dissent.

ALMON, J., recuses himself.

FAULKNER, Justice (dissenting in Part II of the opinion).

At the outset it may appear to the reader of this opinion that it is somewhat peculiar for me to be writing the majority opinion on one issue, while at the same time writing the dissenting opinion as to the other issue. This calls for an explanation. The case was originally assigned to me for preparation of the opinion of the court. The majority of the court agreed with my views on the minimal due process issue. Likewise, a majority of the court disagreed with my view on the issue involving the uncorroborated testimony of accomplices.

Even though the probation officer referred to Armstrong's managing a place of ill repute, and having been found guilty of selling beer on Sunday in violation of law, two seemingly valid reasons for revoking probation, it is obvious the probation officer was concerned only with the robbery and kidnaping charges. His recommendation is, "If testimony is offered implicating Armstrong in the robbery and kidnaping of Mr. and Mrs. Lewis Faucett, it is my recommendation that his probation be revoked." As noted above, the only testimony implicating Armstrong in the crimes came from accomplices.

The Court of Criminal Appeals concluded that while a felony conviction cannot be had on the uncorroborated testimony of an accomplice, probation may be revoked based upon such testimony. I do not agree with this conclusion. I am of the opinion that the "reasonable satisfaction from the evidence" standard applied by a trial judge in a revocation hearing would not include uncorroborated testimony of accomplices. That standard would at least be equal to evidence of probable cause required to bind a person over to the grand jury.

In State v. Smith, 138 Ala. 111, 35 So. 42 (1902), Chief Justice McClellan wrote to the question whether the uncorroborated testimony of an accomplice may be sufficient to show probable cause to believe that a felony has been committed and that the party under inquiry is guilty thereof. The Chief Justice stated:

"Can there be said to be even probable cause shown in any case by testimony which the law expressly and positively

declares to be insufficient to support a conviction? We think not. The whole theory of holding accused persons to the grand jury is that the evidence before the examining magistrate or the judge on habeas corpus is sufficient to sustain a finding of guilt by a petit jury when he shall be indicted and brought to the bar of the court. When there is not such evidence, it is not the contemplation of the law that the accused shall be held. To hold him would be a vain and useless thing, involving his incarceration not as a punishment for crime, and not really to the end that he should be tried for a crime charged of his probable guilt of which there is evidence to prove, but at. the best upon a mere speculation that evidence may be found to corroborate that of the accomplice."

I would not be as unkind to *Smith* as Mr. Justice Bloodworth. If Smith is going to be buried it should have a decent funeral—maybe not a requiem mass—but at least, a few kind words before it is lowered in a grave.

It does not appear that Armstrong has ever been tried for the charges in the indictment. The position of the State in this case may be as that described in *Morrissey* by Chief Justice Burger speaking of revocation of parole:

> "Sometimes revocation occurs when the parolee is accused of another crime; it is often preferred to a new prosecution because of the procedural ease of recommitting the individual on the basis of a lesser showing by the State."

Because of the danger that accomplice's testimony may be polluted, it is my opinion that such testimony must be corroborated in order to warrant revocation of probation when that is the sole basis of revocation. Here it appears that the probationer was implicated in a crime only on the accomplices' testimony, which was not corroborated.

I respectfully dissent to the ruling of the court as to Issue II.

JONES, Justice (concurring in part and dissenting in part).

I concur in Part I.

Because of that portion of the opinion dealing with the uncorroborated testimony question (Part II), with which I cannot agree, I am constrained to address myself to this issue.

Assume, for example (which is more factual than hypothetical), that the only violation of the conditions of probation is the alleged robbery of the drugstore. At the revocation hearing, the only evidence adduced is that of a confessed accomplice who says, "I robbed the store but he knew about it and helped in planning the act." The defendant's probation is revoked. He is never brought to trial for robbery for the obvious reason that the state cannot obtain a conviction. Without this charge, the defendant could still be on probation for the prior conviction. He is now, in effect, serving time for the commission of an offense for which he could not be tried and convicted. The same policy reason for not permitting a conviction on the testimony of an accomplice, unless corroborated, equally obtains here. Its reliability is not increased by the nature of the hearing, whether to determine if his probation will be revoked or his guilt or innocence of the offense. The "corroboration" rule is not a mere rule of evidence, but a substantive rule going to the burden of proof—an essential element of the offense, legislatively mandated by Tit. 15, § 307, Alabama Code.

This does not mean, of course, that the trial judge is held to the more strict standard of "convinced beyond a reasonable doubt," the "hearsay" rule, and other procedural and substantive rights of the defendant which would govern in a jury trial of the alleged offense. But, in my opinion, it ought to mean that where a criminal violation is the basis for revocation of proba-

tion, there should be sufficient proof of each of the elements of the offense to reasonably satisfy the trial court that the defendant has in fact committed the offense, and thus violated the terms of his probation. Otherwise, we are right back to pre*Gagnon* and *Morrissey,* saying, as we did then, that because probation is a matter of grace in the first place, it can be revoked at will; so why the necessity for any degree of proof with respect to the violation charged?

To be sure, many states and the federal system do not have the "uncorroborated testimony of an accomplice" rule, but we do, and for good reason. It is the wisdom of this rule that such testimony, by its very nature, is so unreliable as to require corroboration to convict for a felony. Because of the lack of the full panoply of constitutional rights at a revocation hearing (e. g., trial by jury), there is even more reason to preserve and apply this rule.

Therefore, I concur in Part I and dissent with respect to Part II.

MADDOX, Justice (concurring specially in Part I of the opinion).

I agree that the case needs to go back to trial court to allow the trial judge to put into the record a written statement as to the evidence he relied on and the reasons why he revoked Armstrong's probation. Gagnon v. Scarpelli, 411 U.S. 778, 93 S.Ct. 1756, 36 L.Ed.2d 656 (1973). I think we all know that the trial judge relied on the testimony of Armstrong's alleged co-conspirators and that of the probation officer in revoking Armstrong's probation because of the robbery and kidnapping charges, but one of the *Gagnon* standards does say that the factfinder (that would be the trial judge in probation matters) must make a written statement; therefore, I think this written record needs to be made for whatever benefit, if any, it will be to Armstrong. Cf. Foy v. Bounds, 481 F.2d 286, 4 Cir., 1973.

I also agree in that portion of the majority opinion which affirms the Court of Criminal Appeals in its conclusion that no corroboration of the testimony of accomplices is required in probation revocation hearings.

I do not agree with the holding of the majority that minimal due process was not accorded Armstrong in all other respects. I will detail each standard set out in *Gagnon* and attempt to show why Armstrong was accorded "due process," in all other respects.

(1) *Written notice of the claimed violation of probation.*

I believe Armstrong received written notice of the claimed violations of probation. Armstrong was actually arrested on an order of his probation officer. The order was issued pursuant to Title 42, § 24, Code 1940 (Recomp. 1958) which provides:

"The period of probation or suspension of execution of sentence shall be determined by the court and such period may be continued, extended or terminated. Upon the satisfactory fulfillment of the conditions of probation or suspension of sentence the court shall by order duly entered on its minutes discharge the defendant. At any time during the period of probation or suspension of execution of sentence, the court may issue a warrant and cause the defendant to be arrested for violating any of the conditions of probation or suspension of sentence. Any probation officer, police officer or other officer with power of arrest upon the request of the probation officer, may arrest a probationer without a warrant. In case of an arrest without a warrant the arresting officer *shall have a written statement by said probation officer setting forth that the probationer has, in his judgment, violated the conditions of probation and said statement shall be sufficient warrant for the detention of said probationer in the county jail, or other appropriate place of detention, until such probationer shall be brought be-*

*fore the court. Such probation officer shall forthwith report such arrest and detention to the court and submit in writing a report showing in what manner the probationer has .violated probation.* Thereupon the court, after a hearing, may revoke the probation or suspension of execution of sentence and shall proceed to deal with the case as if there had been no probation or suspension of execution of sentence; and, in cases certified from a court of inferior jurisdiction, shall order and adjudge that the sentence be immediately executed." [Emphasis added.]

The trial judge had ordered a warrant to issue to arrest Armstrong on November 15, 1973. The minute entry reads:

"It being made to appear to the Court that the Probationer herein is delinquent as such, is reputed to have violated the criminal laws, and consorting with associates of bad repute and that a hearing should be. had to determine whether probation herein should be revoked or other action taken by the Court.

"It is therefore the order and judgment of the court and it is ordered and adjudged by the court that probationer herein is delinquent as such, and that probationer be, and hereby is, declared delinquent and that the running of probationers probationary period be and hereby is tolled and stopped and that capias and warrant forthwith issue for arrest of probationer and that when apprehended probationer be brought before the court for hearing for the determination of the truth of charges made against probationer herein and what action should be taken by the court and whether probation herein should be revoked and order suspending sentence herein set aside. Done and ordered this 15th day of November, 1973. Aubrey Dominick, Judge Presiding

"It being brought to the attention of the court that Probationer has been ar-rested, and has an attorney to represent him, the probation revocation hearing is hereby set for November 19, 1973, at 9:00 o'clock A.M. before the undersigned. Done and ordered this 15th day of November, 1973.

Aubrey Dominick, Circuit Judge."

In Foy v. Bounds, supra, Judge Haynesworth said: "The *warrant* gave him written notice of the conduct with which he was charged as violating the terms of his probation." I do not know how specific the warrant in Foy v. Bounds, was, but I think the procedure here was specific enough to notify Armstrong, under *Gagnon* standards, of the claimed violation. Furthermore, Armstrong's lawyer was told on Thursday before the Monday hearing that Armstrong's probation would probably be revoked *because of the indictments.* This was not written notice, but we are talking about "due process" and fundamental fairness. In short, I think Armstrong's lawyer had sufficient notice of the alleged claims of violation of probation. I think he knew on Thursday that the trial judge would probably revoke probation because of the criminal charges.

(2) *Disclosure to probationer of evidence against him.*

The delinquency report prepared by the probation officer was given to Armstrong's attorneys on the morning of the revocation hearing. The record reflects as far as I can determine, no attempt was made by Armstrong's attorneys to get more specifics about the alleged claims of violation of probation during the four days prior to the hearing. Armstrong's attorney asserted before the hearing began that he "assumed" the delinquency report constituted the charges. I am not sure this is a correct assumption. I believe that Title 42, § 24 contemplates that the warrant, or the probation officer's statement, whichever is used, are the charges. Armstrong was given a copy of the delinquency report. Oral testimony was also presented at the hear-

ing, and Armstrong was confronted by witnesses against him. Consequently, "due process" was accorded Armstrong in this respect, in my opinion.

(3) *Opportunity to be heard in person and to present witnesses and documentary evidence.*

(4) *The right to confront and cross-examine adverse witnesses.*

Both of these rights were given to Armstrong, in my opinion.

(5) *A neutral and detached hearing body.*

I believe that a hearing before a trial judge, even if he is the one who gave probation initially, satisfies this *requirement of neutrality and impartiality.*

(6) *A written statement by factfinders as to evidence relied on and reasons for revoking probation.*

The trial judge failed to do this. I do not understand why a trial judge should be required to do this, but *Gagnon* does set it out as a standard.

*What about a two-stage proceeding? Gagnon* speaks of a two-step procedure—a preliminary hearing and a revocation hearing. In most cases, a two-step procedure will be required, especially if the probationer *will be detained* for a substantial period of time on a warrant or statement awaiting the revocation hearing. But is every probationer entitled to a two-stage proceeding, especially if he has been charged by a grand jury with the commission of a felony? I think not. Other courts which have considered the question agree with me. In fact, I do not believe *Morrissey* or *Gagnon* say that two hearings *must be held* in every case. The facts in *Morrissey* and *Gagnon* are so different from the facts of this case. As I read those cases, they do not condemn the Alabama procedure. In fact, Alabama's proce-

dural statute for parole revocation [Title 42, § 12, Code of Alabama, 1940 (Recomp. 1958)] is approvingly cited in the *Morrissey* case. 408 U.S. at page 488, 92 S.Ct. 2593.

I think *Morrissey* and *Gagnon* address a serious problem—the detention of a parolee or probationer without minimal "due process." Those cases are distinguishable from the facts of this case.

Morrissey was a parolee in Iowa, a state in which *no law* required a hearing before a parole could be revoked. Morrissey was arrested at his parole officer's direction and held in a county jail until the Board of Parole revoked his parole after review of the parole officer's written report. The Supreme Court of the United States held that federal procedural due process requires a hearing, which can be informal, before a state parole can be revoked and that, (1) where state statutes do not require such a parole revocation hearing [Alabama does], and (2) where there is a substantial time lag between arrest and final determination by the parole board [there was no time lag here], and (3) where the parolee is arrested at a place distant from the state institution to which he may be returned before the final revocation decision is made [probationer arrested in Tuscaloosa], given these factors, due process also requires a *minimal* inquiry preliminary hearing [hearing here was full blown], as promptly as convenient after the arrest [hearing held four days after arrest], and at or near the place of arrest or place of the alleged violation [held in Tuscaloosa where violation allegedly occurred].

*Morrissey* further held that this hearing to determine probable cause to believe the parolee had committed acts violating his parole could be held before any neutral and detached independent hearing officer, even a parole officer other than the one recommending revocation [hearing here before a circuit judge]. Other minimal re-

quirements for such initial hearing are detailed in the opinion.

Gagnon v. Scarpelli was a Wisconsin case. Wisconsin, unlike Alabama, had no law requiring a probation revocation hearing. Scarpelli was sentenced to prison but the sentence was suspended and he was placed on probation and permitted to reside in Illinois. The day after Scarpelli was accepted for supervision in Illinois, he was apprehended in the process of a house burglary. The Wisconsin department, apparently an administrative agency, forthwith revoked probation without a hearing [a hearing was held here], and Scarpelli was taken directly to prison in Wisconsin to begin serving his sentence. The Supreme Court held that probation, where sentence has been imposed, is constitutionally indistinguishable from parole, and that Scarpelli was entitled to a preliminary and final revocation hearing as specified in Morrissey v. Brewer.

In *Gagnon*, there was no hearing, preliminary or final.

Some state courts have addressed the question of the necessity for a preliminary hearing in every case. In Singletary v. State, Fla.App., 290 So.2d 116, the District Court of Appeals certified the following question to the Supreme Court of Florida. "Does the decision of the United States Supreme Court in Gagnon v. Scarpelli, 411 U.S. 778, 93 S.Ct. 1756, 36 L.Ed.2d 656 (1973), create an *absolute requirement* for a separate and distinct *preliminary hearing* prior to a formal probation revocation hearing?" The Supreme Court of Florida dismissed the certiorari on April 1, 1974, 293 So.2d 361.

What is the purpose of the preliminary hearing suggested in *Morrissey* and *Gagnon*? In my opinion, the sole purpose of the preliminary hearing is to determine whether there is probable cause to believe that a probationer has violated the terms

of his probation. See Stevenson v. State of Fla., Fla.App., 300 So.2d 281; Bernhardt v. State, 288 So.2d 490 (Fla.). As a matter of fact, the hearing is so informal that it can be held before a probation officer other than the one who is supervising the probationer.

See Singletary v. State, Fla.App., 290 So.2d 116; Annotation, 29 A.L.R.2d 1132, Nature and Sufficiency of Notice in a Probation Revocation Hearing.

In Genung v. Nuckolls, 292 So.2d 587 (Fla.), Justice Roberts held that under Florida law a subsequent arrest on a felony charge of a probationer is prima facie evidence of violation of condition of parole and that an adjudication of guilt on the charge is unnecessary to a revocation of probation. The *Genung* case stands for the proposition that no preliminary hearing is necessary when there has been a subsequent arrest on a felony warrant. Judge Haynesworth, in Foy v. Bounds, 481 F.2d 286, 289 (4 Cir., 1973), discussed the standards set out in *Gagnon,* including the necessity for a preliminary hearing. He said:

"Within recent weeks, the Supreme Court in Gagnon v. Scarpelli, 411 U.S. 778, 93 S.Ct. 1756, 36 L.Ed.2d 656 announced due process standards governing probation revocation hearings. In effect, the Court adopted standards enunciated earlier for parole revocation hearings in Morrissey v. Brewer, 408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 484. Except that there was no preliminary hearing in Ohio to determine probable cause for a later full revocation hearing, and with the possible exception of the matter of confrontation, to be discussed presently, Foy's hearing abundantly complied with all of the due process requirements. The warrant gave him written notice of the conduct with which he was charged as violating the terms of his probation. There was full disclosure of all of the

**112**

evidence against him, and the entire file was opened to his lawyer. The hearing was before an impartial trial judge, who filed a written opinion stating his findings of fact upon which he based the revocation order."

\*   \*   \*   \*   \*   \*

"The absence of an earlier preliminary hearing in Ohio before an impartial officer, not necessarily a judicial one, would have provided immediate assurance against inappropriate recommendations by an over-zealous supervising probation officer, but the absence of such a hearing hardly can be said to have infected the integrity of the factfinding process in the North Carolina hearing."

We have grand jury indictments here. A grand jury indictment satisfies any requirement of probable cause that the defendant violated the law and a condition of probation, in my opinion. Why does the state have to hold another independent hearing to decide whether there is probable cause to detain the probationer until the time a revocation · hearing can be held when a grand jury has found an indictment? In other words, "due process" does require that the defendant not be at the complete mercy of the parole or probation officer as was true in both *Morrissey* and *Gagnon.* However, Armstrong is in a different position. A grand jury indictment charged that Armstrong had violated the law. The indictment was enough, in my opinion, to hold him until the revocation hearing set four days hence. In fact, the indictment authorized the state to arrest and hold Armstrong until he could make bond. The revocation hearing was held *promptly,* as required by law, so I see no denial of fundamental fairness.

Except as indicated, I think the trial judge complied substantially with *Gagnon.* I, therefore, thought it desirable to set forth my separate views in this special concurrence.