This is an appeal from a judgment revoking the probation of appellant as to a judgment on April 3, 1979, adjudging him a youthful offender and committing him to "the custody of the Director of the Department of Corrections for a period of 3 years."
On April 22, 1980, the probation officer of DeKalb County, filed a "delinquent charge," denominated "Violation of Condition No. 2: New Offense: Murder," setting forth, interalia, that on or about April 19, 1980, the probationer had an altercation with one Charlie Ray Nash at a residence in Collinsville, Alabama, and that while Charlie Ray Nash was standing in the front yard, the probationer shot Nash with a pistol. It was further stated in the charge that "Nash was hit one time in the chest area and later died from this wound." A copy of the charge was served upon the probationer, an attorney was appointed to represent him, and a hearing was held May 8, 1980, at which the probationer appeared with his appointed attorney. Evidence was presented, including testimony of the probation officer and Chief of Police Clement Osborn of Collinsville.
A major insistence of appellant is that there was "no evidence of a corpus delicti" as to the alleged murder and that there was no evidence "that Appellant's criminal agency caused the deceased's death."
The probation officer testified that Charlie Ray Nash had been a complaining witness against the appellant in previous cases. Chief of Police Osborn testified that he knew both the appellant and Charlie Ray Nash, that on April 19, 1980, he received a call "to go to the scene of a homicide in Collinsville," and when he arrived there, he found other officers already present and "checking the patient, Charlie Ray Nash, to determine if he was alive." He said they checked his vital signs "and determined that he was dead at the time" they arrived. He observed a wound on Nash, a puncture wound "of the chest," that appeared to him to be a gunshot wound. He further said that on the next day he had an interview with the appellant, and that after all appropriate warnings had been given to him as to his constitutional rights, appellant told him that he and Charlie Ray Nash had had an argument, that before either of them left the premises the appellant obtained a pistol and shot at Nash. On cross-examination, his testimony was in part as follows:
 "Q. Events immediately prior to and at the time of the shooting. *Page 603 
 "A. Okay. He stated that when his mother and Charlie Ray were standing out in front of the house, that Charlie Ray drew back his hand like to hit his mother, and let's see. I believe right after that statement he said, `That's when I shot him.'
 "Q. Okay. Did he tell you he thought he was about to harm his mother?
 "A. I don't believe he put it that way. I don't believe he used that word.
 "Q. Did he say anything about he thought he was going to hit his mother?
"A. That's what I just said. The other details . . .
 "Q. Did he tell you whether or not he meant to shoot him?
"A. Whether he meant to shoot him?
"Q. Uh-huh.
"A. No, he didn't say that.
"Q. Did he ever say `I didn't mean to kill him.'?
"A. Yes, that's correct. He said that."
Chief Osborn testified on re-direct examination that appellant said that at the time he shot, his mother was "on her way back into the house." According to the witness,
"She wasn't standing next to Nash?
 "A. No, sir. According to Mr. Carter's statement they had finished their discussion and she had turned to go back in, and Charlie Ray Nash had turned away from her.
 "Q. So, they were not even facing each other at that time?
"A. According to the statement, that's correct."
To justify the revocation of probation, it is not necessary that the evidence be strong enough to convince the court beyond a reasonable doubt that the probationer has violated a term of his probation. It is sufficient if the court is reasonably satisfied therefrom of the truth of the charge. Armstrong v.State, 294 Ala. 100, 312 So.2d 620 (1975); Martin v. State,46 Ala. App. 310, 241 So.2d 339 (1970); Wright v. State, Ala.Cr.App., 349 So.2d 124 (1977); Thompson v. State, Ala.Cr.App., 356 So.2d 757 (1978). There was sufficient evidence to justify the trial court in concluding that thecorpus delicti had been shown and that appellant was the person who murdered Charlie Ray Nash.
Appellant's only other contention is that the trial judge did not "give a written statement as to the evidence relied on and reasons for revoking probation." The record is to the contrary. The proceedings, including all of the testimony, were reported and transcribed by a court reporter. At the conclusion of the evidence and argument of counsel for the respective parties, the court stated:
 "All right, Gentlemen, I'm reasonably satisfied from the evidence that has been presented that the defendant has committed an unlawful homicide while on probation, and I will, for that reason, revoke his probation and require him to serve the sentence originally imposed in this case."
In one of the paragraphs of a three-paragraph recorded judgment of the trial court and signed by the trial judge, it is stated:
 "The court is reasonably satisfied from the evidence that the defendant has violated the law by committing an unlawful homicide as set forth in the delinquency report and therefore the court hereby revokes the defendant's probation and requires the defendant to serve the remainder of his three-year sentence imposed by this court on April 3, 1979. The defendant is given credit for 30 days jail time toward his three-year sentence."
A part of the written "delinquency report" to which reference in the judgment was made is as follows:
 "The alleged offense allegedly occurred on or about 4-19-80. According to Investigating Officers, the incident took place at the house of Ms. Odell Hill located in Collinsville, Ala. Carter was at Ms. Hill's house and the victim, Charlie Ray Nash, drove up to the house and got into an argument with Carter. Ms. Hill then broke up the argument. Charlie Ray Nash then went out and got a gun out of his car and came back into the house, and he and Carter got into another argument. Nash then left and went out the front *Page 604 
door. At this time, it was alleged that Carter's step-sister, Christine Smith, passed a pistol to Carter. Carter then went out the back door and around Ms. Hill's house. At this time, Charlie Ray Nash and Carter's mother, Jeanette Carter, were standing in the front yard talking. It was at this time that James Carter allegedly shot Nash. Nash was hit one time in the chest area and later died from this wound. Carter was arrested on 4-20-80 by Dekalb County Law Enforcement Officials and charged with the offense of Murder."
There is no contention that any of the requirements and guidelines which must be met for minimal due process to be accorded a probationer other than a "written statement by the judge as to the evidence relied on and reasons for revoking probation,"[1] were not met. We take it that the requirement of a "written statement by the judge as to the evidence relied on and reasons for revoking probation" relates to a matter of substance and not mere form, so as to correctly inform probationer of the "evidence relied on and reasons for revoking probation." That he was correctly informed before the hearing that he attended was completed there can be no reasonable doubt and some of it was already in writing; all of it was reduced to writing either contemporaneously or in due course. That no doubt existed as to the "evidence relied on and reasons for revoking probation" is emphasized by the fact that immediately after the court announced that "for that reason" it revoked his probation, his attorney said:
 "Judge, Mr. Carter would like to give notice of appeal at this time and point out to the court that he is indigent and cannot afford a transcript."
Appellant's right to a "written statement by the judge as to the evidence relied on and reasons for revoking probation" was not violated. See Thompson v. State, Ala.Cr.App., 356 So.2d 757
(1978).
The judgment of the trial court should be affirmed.
The foregoing opinion was prepared by Retired Circuit Judge LEIGH M. CLARK, serving as a judge of this Court under the provisions of § 6.10 of the Judicial Article (Constitutional Amendment No. 328); his opinion is hereby adopted as that of the Court. The judgment of the trial court is hereby
AFFIRMED.
All the Judges concur.
[1] Set forth in Morrissey v. Brewer, 408 U.S. 471,92 S.Ct. 2593, 33 L.Ed.2d 484 (1972) and Gagnon v. Scarpelli,411 U.S. 778, 93 S.Ct. 1756, 36 L.Ed.2d 656 (1973) and reiterated inArmstrong v. State, 294 Ala. 100, 102-103, 312 So.2d 620
(1975).