BASCHAB, Presiding Judge,
dissenting.
In this case, the appellant argues that his counsel was not present during the hearing in which his community corrections sentence was revoked. The majority holds that this claim is not preserved because it was not presented to the circuit court and because it does not fall within one of the three exceptions to the general rules of preservation set forth in Evans v. State, 794 So.2d 1234 (Ala.Crim.App.2000). However, because this case involves the issue of whether the appellant was deprived of his right to be represented by counsel during his revocation hearing, I believe that we should address the merits of the appellant’s claim even though it is raised for the first time on appeal.
In addressing this issue, we must first determine whether the appellant had a right to counsel during the revocation proceeding. In this case, the appellant was sentenced to the Community Punishment and Corrections Program.
“A revocation hearing shall be conducted before the court prior to revocation of the community corrections sentence. The court shall apply the same due process safeguards as a probation revocation proceeding and may modify or revoke the community punishment sentence and impose the sentence that was suspended at the original hearing or any lesser sentence.... ”
§ 15-18-175(d)(3)b., Ala.Code 1975.
“ ‘[Tjhere is no automatic right to counsel in a probation revocation proceeding.’ Law v. State, 778 So.2d 249, 250 (Ala.Crim.App.2000) (citing Spence v. State, 766 So.2d 206, 207 (Ala.Crim.App.1999)). Whether a probationer is entitled to counsel is determined on a case-by-case basis. See Law, 778 So.2d at 250; Armstrong v. State, 294 Ala. 100, 312 So.2d 620 (1975).”
Gibbons v. State, 882 So.2d 381, 382 (Ala.Crim.App.2003). Rule 27.6(b), Ala. R.Crim. P., provides, in pertinent part:
“Counsel will be appointed to represent an indigent probationer upon request:
“(1) If the probationer makes a col-orable claim that the probationer has not committed the alleged violation of the conditions or regulations of probation or the instructions issued by the probation officer; or
“(2) Even when the violation is a matter of public record or is uncontested, if there are substantial reasons that justify or mitigate the violation and that may make revocation inappropriate, and the reasons are complex or otherwise difficult to develop or present.”
In this case, the Community Corrections and Punishment Authority alleged that, on May 17, 2006, the appellant left for unapproved leave; that the appellant was supposed to be on his job site; that the appellant left his transmitter at his job site; and that the appellant left his job site.[1] Dur *85 ing the revocation hearing, the following occurred:
“[THE COURT:] Where did he leave the transmitter?
“MS. OSBORN: The transmitter was left at his job site.[2]
“THE COURT: Where?
“MS. OSBORN: Judge, I’d have to get the address. I don’t have that. He was at his father’s residence, and the transmitter was still at the job site. My understanding was that his father had sent him for some tools or something.
“THE COURT: Is that true?
“[THE APPELLANT]: No, sir.
“THE COURT: What isn’t true about it?
“[THE APPELLANT]: I didn’t leave my transmitter. I wasn’t at my daddy’s.
“THE COURT: So all she said is completely false?
“[THE APPELLANT]: Yes, sir. That’s what we went through before. I wasn’t at the house, you know. I mean, I wasn’t there. You know, I was found on my job site with my bracelet at work when all of it happened. You know, the Hackleburg law went back and put my monitor on the thing, and she told him to turn me loose, she’d come down there and they’d fix my bracelet in the morning.
“THE COURT: Wait. She told who to turn you loose?
“[THE APPELLANT]: The Hackle-burg cop, Larry Aaron.
“Did you not?
“THE COURT: Hackleburg cop?
“[THE APPELLANT]: Yeah. Larry Aaron, told him for me to be ordered to be released and come down there in the morning. They went to take the handcuffs off of me, and Kenny said to hold me right there and went to talking, and the next thing I know, I’m headed to jail.
“MS. OSBORN: His bracelet, Judge—
“THE COURT: Was the bracelet on you?
“[THE APPELLANT]: Yes.
“MS. OSBORN: He had put it on his leg, and when they were either getting him in or out of the car, it just happened to fall off.
“[THE APPELLANT]: Somebody told them to bring me down there and have it fixed that morning, to release me until all that happened. Then the next thing I know, I’m on the way to jail. He was taking the handcuffs off me, and then they said to hold me there — or Kenny did and got on the phone, and the next thing I know, I’m sitting there— I’m headed to jail.
“MS. OSBORN: The reason we had him held, Judge, it takes a few minutes for the computer to catch up with his whereabouts. It takes about five minutes. So when they notified us that his bracelet was off, that’s when we cut the computer on his case to find where he had gone to. And again, his bracelet did remain at the work site while he was at his father’s house. And then when the officer got there to pick him up — he went back to the job site — the bracelet just happened to fall off of his leg.
“[THE APPELLANT]: Well, I mean—
*86 “THE COURT: It just happened to fall off?
“[THE APPELLANT]: Well, I mean, it should be latched right to start with. I don’t know if they made a mistake.
“THE COURT: Who’s Tyler Whitehead?
“[THE APPELLANT]: Tyler? Oh, that’s this guy from Hackleburg.
“THE COURT: Did you get in the truck with him?
“[THE APPELLANT]: No, sir.
“THE COURT: You didn’t get in the truck with him and jump out of the truck?
“[THE APPELLANT]: No, sir, I did not. And even Kenny come down to the thing and said that I didn’t get in that truck. They tried to say I tried to get in the truck, but I didn’t.
“THE COURT: But you didn’t?
“[THE APPELLANT]: No. He come down there and booked me in at the jail and asked me—
“THE COURT: Jenkins?
“[THE APPELLANT]: Yes, sir.”
(R. 2-5.)
In this case, it does not appear that the circuit court made an initial determination as to whether the appellant was entitled to have counsel appointed to represent him. Furthermore, based on the record before us, it appears that the appellant may have a colorable claim that he did not commit the alleged violations. Accordingly, we should remand this case to the circuit court with instructions that that court make specific, written findings regarding whether the appellant was entitled to have counsel appointed to represent him during the revocation hearing. For these reasons, I must respectfully dissent.

. The Community Punishment and Corrections Authority also alleged that the appellant owed $34 in electronic monitoring fees, and the appellant admitted that he owed the electronic monitoring fee. However, the circuit court's written revocation order indicates that *85 the circuit court revoked the community corrections sentence based only on the grounds that he had committed the offenses of unapproved leave and leaving the transmitter at his job site.

. Based on the record before us, the identity of Ms. Osborn is not clear.