JOINER, Judge.
Jody Alan Mead appeals the Circuit Court's order revoking his probation. On October 28, 2016, Mead pleaded guilty to three counts of first-degree theft of property, see § 13A-8-3, Ala. Code 1975. He was initially sentenced to 84 months' imprisonment; that sentence was split, and Mead was to serve 15 months' imprisonment followed by 5 years' supervised probation. Mead did not appeal his convictions and sentence.
Mead began serving the probationary period of his sentence on September 22, 2017. On December 15, 2017, Mead's probation officer, Shannon Hale, filed a delinquency report alleging that Mead had violated the terms and conditions of his probation. Specifically, the report alleged that Mead: (1) had committed the new offense of second-degree domestic violence, see § 13A-6-131, Ala. Code 1975, and (2) had failed to report as directed. As a result of the delinquency report, Mead was arrested on December 27, 2017.
On March 14, 2018, the circuit court conducted a probation-revocation hearing at which Mead was present and represented by counsel. During that hearing, the State presented testimony from only Deputy Chris Cahoon with the Cullman County Sheriff's Office.
Deputy Cahoon testified that, on December 1, 2017, he was dispatched to the Cullman Regional Medical Center concerning a possible "domestic disturbance." (R. 6-7.) When he arrived at the hospital, Deputy Cahoon stated, he spoke with the nurses who told him that a woman had been brought to the hospital with "extreme road rash and trauma to her head." (R. 7-8.) Deputy Cahoon further testified that, according to the nurses, the woman had said that she had been "pushed from a vehicle." (R. 8.)
In light of that information, Deputy Cahoon decided to speak with the victim whom he identified as Lisa McClendon. According to Deputy Cahoon, McClendon was initially afraid to tell him what happened. She later told him, however, that, earlier that day she had borrowed Mead's truck and had failed to return it at the time he had told her to do so. McClendon also told him that, when she eventually returned the truck to Mead, he was "highly irate," which led to an argument. (R. 8-9.)
*862 Deputy Cahoon also testified that McClendon had told him that, at some point, Mead's father, who lived across the street from Mead, told Mead to take McClendon home. McClendon told Deputy Cahoon that, as they drove down County Road 1545, Mead reached over, opened the truck door, and pushed McClendon out onto the roadway. After that happened, McClendon told Deputy Cahoon that Mead's father picked her up, drove her to the hospital, and then left. Deputy Cahoon testified that, when he interviewed her, McClendon had a massive wound on the top of her head that, he said, looked like a "gunshot wound." (R. 9.) He further stated that she had a rash all down her face and down the side of her body.
After speaking with McClendon, Deputy Cahoon contacted her stepmother, Linda, to ask if she could pick up McClendon from the hospital. When she arrived, Linda told Deputy Cahoon that Mead had telephoned her earlier that evening and that he had been irate and screaming about McClendon having his truck. Deputy Cahoon testified that Linda had told him that she was "scared that when [McClendon]--if she showed back up that ... harm would come to her, and it wouldn't be the first time that [Mead and McClendon] had been in a physical domestic situation." (R. 10.)
Deputy Cahoon testified that, following that conversation, he made contact with Mead at an address off County Road 1545 and arrested him for second-degree domestic violence. According to Deputy Cahoon, as he was driving Mead to the county jail, Mead told him that McClendon was the one who had opened the door and jumped out of the truck.
After the State rested its case, Mead's defense counsel objected to the State's use of hearsay to satisfy its burden of proof. That objection was overruled. Mead did not offer any evidence or testimony in his own defense.
After hearing the above testimony from Deputy Cahoon, the circuit court found that it was reasonably satisfied that Mead had violated the terms and conditions of his probation by committing the new offense of second-degree domestic violence and by failing to report as directed. The court revoked Mead's probation and ordered him to serve his original sentence of 84 months' imprisonment with credit for time served. Thereafter, Mead filed a timely notice of appeal.
I.
Mead argues that the circuit court lacked the authority to revoke his probation for "failing to report as directed." (Mead's brief, pp. 9-11.) Specifically, Mead argues that, before his probation officer filed her delinquency report against him in December 2017, he had never received a copy of the "Order of Probation" containing the terms and conditions of his probation. Id. As a result, Mead contends, his probation should not have been revoked. Id.
Initially, we note that this argument has not been preserved for appellate review. It is well settled that " '[t]o preserve an issue for appellate review, the issue must be timely raised and specifically presented to the trial court and an adverse ruling obtained.' " Cochran v. State, 111 So.3d 148, 153 (Ala. Crim. App. 2012) (quoting Mitchell v. State, 913 So.2d 501, 505 (Ala. Crim. App. 2005) ). Additionally,
" '[t]he general rules of preservation apply to probation revocation hearings. Puckett v. State, 680 So.2d 980, 983 (Ala. Cr. App. 1996), citing Taylor v. State, 600 So.2d 1080, 1081 (Ala. Cr. App. 1992). This Court "has recognized, in probation revocation proceedings, only two exceptions to the general rule that *863 issues not presented to the trial court are waived on appeal: (1) the requirement that there be an adequate written order of revocation ..., and (2) the requirement that a revocation hearing actually be held." Puckett, 680 So.2d at 983.' "
Bauer v. State, 891 So.2d 1004, 1006 (Ala. Crim. App. 2004) (quoting Owens v. State, 728 So.2d 673, 680 (Ala. Crim. App. 1998) ). This Court has also recognized a third exception that a defendant can raise for the first time on appeal--namely, that the circuit court failed to advise the defendant of his or her right to request an attorney during the probation-revocation proceedings. See Croshon v. State, 966 So.2d 293 (Ala. Crim. App. 2007). A fourth exception to the preservation rule also allows a defendant to raise for the first time on appeal the allegation that the circuit court erred in failing to appoint counsel to represent him or her during the probation-revocation proceedings. See Ex parte Dean, 57 So.3d 169 (Ala. 2010).
Nothing in the record before us indicates that Mead timely raised an objection to the circuit court's revocation of his probation on the basis that he never received the "Order of Probation" containing the terms and conditions of his probation or that, if he did, an adverse ruling was obtained. Importantly, none of the exceptions to the preservation requirement that are applicable to probation-revocation hearings, which we have discussed above, actually apply to this issue. Thus, this issue is not properly before this Court for appellate review, and Mead is not entitled to relief on this issue.[1]
II.
Mead also argues that the circuit court erroneously relied solely on hearsay evidence to revoke his probation based on the second-degree domestic-violence offense. According to Mead, the State's evidence against him consisted only of the testimony given by Deputy Cahoon who testified about statements that were made to him by specific witnesses during the course of his investigation. Mead contends that, because that evidence was hearsay and was the only evidence presented by the State to prove that he had violated his probation by committing a new offense, his probation should not have been revoked. (Mead's brief, pp. 11-13.) We agree.
It is well settled that
" ' "[p]robation or suspension of sentence comes as an act of grace to one convicted of, or pleading guilty to, a crime. A proceeding to revoke probation is not a criminal prosecution, and we have no statute requiring a formal trial. Upon a hearing of this character, the court is not bound by strict rules of evidence, and the alleged violation of a valid condition of probation need not be proven beyond a reasonable doubt." '
" Martin v. State, 46 Ala. App. 310, 312, 241 So.2d 339, 341 (Ala. Crim. App. 1970) (quoting State v. Duncan, 270 N.C. 241, 154 S.E.2d 53 (1967) (citation omitted) ). Under that standard, the trial court need 'only be reasonably satisfied from the evidence that the probationer has violated the conditions of his probation.'
*864 Armstrong v. State, 294 Ala. 100, 103, 312 So.2d 620, 623 (1975). Absent a clear abuse of discretion, a reviewing court will not disturb the trial court's conclusions. See Moore v. State, 432 So.2d 552, 553 (Ala. Crim. App. 1983), and Wright v. State, 349 So.2d 124, 125 (Ala. Crim. App. 1977)."
Ex parte J.J.D., 778 So.2d 240, 242 (Ala. 2000). In Alabama, " '[t]he law is clear that the formality and evidentiary standards of a criminal trial are not required in parole revocation hearings.' " Puckett v. State, 680 So.2d 980, 981 (Ala. Crim. App. 1996) (quoting Ex parte Belcher, 556 So.2d 366, 368 (Ala. 1989) ). A revocation proceeding is "a bench trial and the trial court is the sole fact-finder." Ex parte Abrams, 3 So.3d 819, 823 (Ala. 2008). " 'It is not necessary in a probation revocation hearing to provide proof beyond a reasonable doubt or by a preponderance of the evidence. Rather, the lower court need only be "reasonably satisfied from the evidence that the probationer has violated the conditions of his probation." ' " Puckett, 680 So.2d at 982 (quoting Mitchell v. State, 462 So.2d 740, 742 (Ala. Crim. App. 1984) ).
With regard to the admissibility of hearsay evidence at a probation-revocation hearing, this Court has previously stated that such evidence may be admitted at the discretion of the circuit court. See Puckett, 680 So.2d at 981-82. It is well settled, however, that
"hearsay evidence may not form the sole basis for revoking an individual's probation. See Clayton v. State, 669 So.2d 220, 222 (Ala. Cr. App. 1995) ; Chasteen v. State, 652 So.2d 319, 320 (Ala. Cr. App. 1994) ; and Mallette v. State, 572 So.2d 1316, 1317 (Ala. Cr. App. 1990). 'The use of hearsay as the sole means of proving a violation of a condition of probation denies a probationer the right to confront and to cross-examine the persons originating information that forms the basis of the revocation.' Clayton, 669 So.2d at 222."
Goodgain v. State, 755 So.2d 591, 592 (Ala. Crim. App. 1999).
Under the Alabama Rules of Evidence, hearsay is defined as a "statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Rule 801(c), Ala. R. Evid. Although hearsay is inadmissible, there are some forms of evidence that have been deemed to be exemptions from or exceptions to this general rule. See Rules 802 and 803, Ala. R. Evid.
On appeal, Mead contends that the circuit court relied solely on hearsay statements relayed by Deputy Cahoon during his testimony at Mead's probation-revocation hearing. Specifically, Deputy Cahoon testified that, during the course of his investigation, he spoke with nurses at the Cullman Regional Medical Center about a woman who had been brought to the hospital with "extreme road rash and trauma to her head." (R. 7-8.) In light of that information, Deputy Cahoon then spoke with that woman who was later identified as McClendon. During his testimony, Deputy Cahoon relayed the statements that McClendon had made to him about what had happened to her. Deputy Cahoon also testified that he spoke with McClendon's stepmother, Linda, who told him how she feared that Mead was going to harm McClendon after he telephoned her and threatened to harm McClendon. Finally, he testified that, while transporting Mead to the county jail, Mead told him that McClendon jumped from his truck on her own volition.
Mead is correct in his assertion that the State did not offer any nonhearsay evidence to prove that Mead violated the terms and conditions of his probation by *865 committing the new domestic-violence offense. Thus, the circuit court erred in revoking Mead's probation on that basis. Accordingly, the circuit court's order of March 14, 2018, revoking Mead's probation is reversed, and the case is remanded for further proceedings consistent with this opinion.
REVERSED AND REMANDED.
Welch, Kellum, and Burke, JJ., concur. Windom, P.J., dissents, with opinion.

Even if this issue had been properly preserved for appellate review, Mead would not be entitled to relief on this issue. The record indicates that Mead began serving his probation on September 22, 2017. (C. 75.) It also indicates that, on October 17, 2017, Mead signed and received a copy of the court's "Order of Probation" containing the terms and conditions of his probation. (C. 81.) This occurred more than two months before his probation officer filed her delinquency report alleging that Mead had failed to report as directed.