Joe Nathan James, Jr., appeals from the revocation of his probation for his 1991 convictions for receiving stolen property, first degree theft, and unlawful breaking and entering (two).
 I.
James contends that the trial court failed to provide him with timely hearings. The record provides the following chronology:
 August 23, 1994: the trial court ordered a probation violation writ issued on CC-91-1402 and CC-91-1404 because of a new capital murder charge (based upon James's commission, according to an eyewitness, of a murder on August 15, 1994);
 August 31, 1994: the trial court ordered a probation violation writ issued in cases CC-91-1403 and CC-91-1405 (two cases not before us);
 February 2, 1995: James was committed to jail on case CC-91-1403 and CC-91-1405;
 February 4, 1995: James was committed to jail on cases CC-91-1402 and CC-91-1404;
 July 28, 1995: preliminary revocation hearing was held;
 September 21, 1995: final revocation hearing was held and probation was revoked in the four cases.
After James's incarceration for the probation violation charges in February 1995, almost six months passed before the initial hearing was held and almost eight months passed before the final revocation hearing was held.
 "Proceedings to revoke probation or parole, while . . . not a part of the 'criminal prosecutions' covered by the Sixth Amendment, are subject to due process limits. In Morrissey v. Brewer [408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 484
(1972)], dealing *Page 1292 
exclusively with the due process protections which attend the parole revocation process, the Court concluded a parolee is entitled to two hearings, a preliminary hearing and a final revocation hearing, and that both must be conducted in a timely fashion. Because the latter might occur after 'a substantial time lag' and at a place distant from where the alleged violation of parole occurred, the Court concluded that 'due process would seem to require that some minimal inquiry be conducted at or reasonably near the place of the alleged parole violation or arrest and as promptly as convenient after arrest while information is fresh and sources are available.' As for the final hearing, the Court in Morrissey declared that it 'must be tendered within a reasonable time after the parolee is taken into custody,' but added that a 'lapse of two months . . . would not appear to be unreasonable.' Later in Gagnon v. Scarpelli
[411 U.S. 778, 93 S.Ct. 1756, 36 L.Ed.2d 656 (1973)], the Court held that a probationer 'is entitled to a preliminary and final revocation hearing, under the conditions specified in Morrissey,' and thus a probationer also has a due process right to timely hearings."
W. LaFave and J. Israel, Criminal Procedure § 18.5 (2nd. ed. 1992) (footnotes omitted).
Rule 27.5, Ala. R. Crim. P., states that the initial hearing should be held "without unnecessary delay" after the violator is arrested, and Rule 27.6 requires that the revocation hearing be held "within a reasonable time after the probationer's initial appearance under Rule 27.5." The comments to the Rule state, "[I]t is contemplated that a hearing will be held as soon as feasible and that a probationer will not be subjected to lengthy or unwarranted confinement prior to hearing."
We cannot conclude that James's custody is the result of his arrest for the capital murder offense. The only mention of custody as a result that offense is James's allegation, in a pro se motion to set bond for his probation violation charge, that his bond for that offense was set at $50,000. If the record supported such a finding, James's argument would warrant no further discussion. See N. Cohen and J. Gobert, The Law ofProbation and Parole § 13.03 (1983) (a preliminary hearing is unnecessary "when the alleged violator is already incarcerated on another charge and therefore suffers no loss of liberty because of the pending revocation proceedings"); id., at § 14.04 ("in Moody v. Daggett[, 429 U.S. 78, 97 S.Ct. 274,50 L.Ed.2d 236 (1976),] the Supreme Court made it clear that the clock begins to run for the due process purposes only when custody is the product of a violation warrant as opposed to a new offense").
In regard to the timeliness of the initial hearing, we take note of the following:
 "[C]ourts are not likely to invalidate a revocation simply because [the preliminary hearing] was not held immediately. The failure of Morrissey and many statutes to provide anything other than general guidelines for the timing of this hearing allows for considerable discretion. . . .
 "When the issue of a tardy preliminary hearing is raised, courts, drawing an analogy to the right to a speedy trial, generally take the approach of balancing the reasonableness of the delay against the harm caused by the delay. They look at such factors as the length of and reason for the delay, the alleged violator's efforts to secure a timely hearing, and the prejudice caused by the delay.
". . . .
 "Usually the factor approach leads to the conclusion that no violation has occurred. Even if a violation is proven, however, courts are still reluctant to grant any significant relief. . . . If a proper final revocation hearing has been held, they tend to rule that the violator cannot invalidate the revocation solely because of an untimely preliminary hearing. The only situations generally resulting in a dismissal of the revocation arise when the delay causes actual prejudice, or when there has *Page 1293 
been a flagrant abuse of rights or a pattern of denial of a timely preliminary hearing.
 ". . . To assert a viable claim of prejudice, counsel must allege specifically how the missing evidence would have helped the alleged violator's defense."
N. Cohen and J. Gobert, supra, § 13.10 (footnotes omitted).
In regard to the timeliness of the final hearing, we find the following to be helpful:
 "As one might expect, courts have reached widely varying conclusions on when Morrissey requires the final hearing to be held. . . .
 "Courts faced with a challenge to a delay in a final hearing must determine if the delay was unreasonable. Drawing an analogy to speedy trial principles, they often consider some or all of the following factors: the length of and reason for the delay, the alleged violator's efforts to obtain a prompt hearing, and most importantly, the prejudice caused by the delay.
". . . .
 "While the reason for the delay and the offender's efforts to avoid it are important, by far the most significant factor is the prejudice caused by the delay. A few courts have presumed prejudice from the length of the delay, but most hold that the existence or absence of prejudice must be determined on a case-by-case basis. The strongest example of prejudice is proof that specific evidence was lost as the result of the delay. . . . There is some authority for the view that the delay in holding a final revocation hearing can be longer if there has been a preliminary revocation hearing. Apparently the preliminary hearing removes some of the prejudice potentially flowing from a tardy final hearing. In any event, a failure to prove prejudice will usually cause the court to dismiss the delay claim.
". . . .
 "Courts are understandably reluctant to reverse a revocation and order a violator restored to probation or parole because of a delay in holding a final hearing. This extreme remedy would mean that 'one who has been fairly determined to have violated his parole, must go entirely free.' Accordingly, this remedy is rarely given. . . . If a final hearing, fully complying with all other requirements of due process, is eventually held, the fact that it was delayed will not alone justify relief absent prejudice or some other compelling consideration.
 ". . . Any prejudice from a delayed hearing should be documented with specific names, dates, and descriptions of the evidence lost because of the delay. To assert a viable claim of prejudice, counsel must be prepared to show specifically how missing evidence would have helped the alleged violator's defense."
N. Cohen and J. Gobert, supra, § 14.04, 14.05 (footnotes omitted).
For purposes of this case, the considerations before us in regard to the timeliness of each of the two hearings is essentially the same. James has failed to allege that any evidence was missing as a result of the delay and thus has not met the critical burden of showing prejudice. See United Statesv. Taylor, 931 F.2d 842, 848 (11th Cir. 1991), cert. denied,502 U.S. 1102, 112 S.Ct. 1191, 117 L.Ed.2d 433 (1992) (after setting out the factors of the Barker v. Wingo, 407 U.S. 514,92 S.Ct. 2182, 33 L.Ed.2d 101 (1972), speedy trial balancing test, the court stated, "Even if we were to adopt this criteria for parole and probation revocation hearings, we find that defendant suffered no harm by the one year delay because it did not deny him the opportunity to vigorously contest the violation."). The evidence presented against James at the revocation hearing consisted of the testimony of Tammy Snead, an eyewitness to James's murder of his ex-girlfriend. Her testimony, including that on cross-examination, consists of 13 pages of transcript. Moreover, because the final hearing has been held, we find no cause to invalidate the revocation of James's probation.
 II.
James contends that the trial court failed to provide him with a written copy of *Page 1294 
the notice of his alleged probation violation, as required by Rule 27.5(a)(1), Ala. R. Crim. P. That rule requires that, when a probationer is arrested for a probation violation, the court before which the probationer makes his initial appearance after arrest furnish the probationer with a written copy of the alleged violation.
As noted above, James was incarcerated on the probation violation charges on February 2 and 4, 1995; the preliminary revocation hearing was held on July 28, 1995; and the final revocation hearing was held on September 21, 1995. During the latter hearing, the court stated the following in regard to the notice requirement:
 "[T]he reason for the probation violation writ was a new charge brought against the defendant, a charge of capital murder. The defendant was given notice of that in open court. . . . I advised him in open court as to the charges against him.
 "The probation officer, Bobby Roberts, went to the jail to give — to get the defendant to sign the notice of the reason for the probation violation. He refused to sign the notice, and it is contained somewhere in the court file that he refused to sign the notice."
Defense counsel did not contest this observation by the court and asked for no continuance when the final hearing was held. The supplement to the record shows that on August 30, 1995, James was given a written copy of the charges of probation violation showing the offense of capital murder, but refused to sign the notice.
Contrary to James's assertion, he was given notice. Consequently, the holding in Young v. State, 552 So.2d 879, 883
(Ala.Cr.App. 1989), disposes of James's claim:
 "Gagnon v. Scarpelli, supra, and Armstrong v. State, 294 Ala. 100, 312 So.2d 620, 622 (1975), require that a probationer be given 'written notice . . . of the claimed violation of probation.' Although defendant was not served with written notice until December 16, four days before the revocation hearing, there is no specific time requirement for notice, only that it 'must be served sufficiently in advance of scheduled court proceedings so that defendant has a reasonable opportunity to prepare.' W. LaFave J. Israel, Criminal Procedure § 25.4(b) at 158. In the present case, four days was reasonable, particularly in view of the fact that the circuit court inquired of defense counsel, prior to the revocation hearing, 'Do you need any additional time to prepare for the hearing?' and counsel responded in the negative."
James's counsel made no motion for continuance, and thus we assume counsel had adequate time to prepare during the three weeks between notice and the final revocation hearing. See alsoPeople v. Felix, 178 Cal.App.3d 1168, 224 Cal.Rptr. 279
(1986) (failure to seek a continuance bars a due process challenge to the lack of notice of new charges).
 III.
James further contends that the circuit court's written order revoking his probation fails to provide a written statement of the evidence relied on and the reasons for revoking his probation, as constitutionally required by Gagnon v. Scarpelli,411 U.S. 778, 93 S.Ct. 1756, 36 L.Ed.2d 656 (1973), Morrisseyv. Brewer, 408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972), and Rule 27.6(f). The attorney general contends that the circuit court met this requirement in its order entitled "Order Modifying Record as Previously Submitted to the Court of Appeals." In that order, the court stated, "After the hearing the Court was satisfied from the testimony as presented by witness, Tammy Snead, and the testimony of same, that the Petitioner had violated the terms of his probation."
While this statement refers generally to Snead's testimony, it fails to specify the facts relied upon and the reasons for revoking probation. Without this, we have no basis for evaluating the revocation hearing and decision. Committee Comments to Rule 27.6. The import of such a deficiency is *Page 1295 
illustrated by the lack of specified reason. If the court's statement quoted above is interpreted to mean that the court revoked James's probation because of his arrest for capital murder, that reason does not support revocation. As this court held in Allen v. State, 644 So.2d 45, 45-46 (Ala.Cr.App. 1994),
 "A 'mere arrest' or the filing of charges is an insufficient basis for revoking one's probation. . . .
 ". . . All that is required of the trial judge in a probation revocation hearing is that the court be reasonably satisfied therefrom of the truth of the charge. Armstrong v. State, 294 Ala. 100, 312 So.2d 620 (1975); Goodrum v. State, 418 So.2d 942 (Ala.Cr.App. 1982); Carter v. State, 389 So.2d 601 (Ala.Cr.App. 1980).'
 "Smith v. State, 445 So.2d 573, 574-75
(Ala.Cr.App. 1984). The record contains no statement by the trial judge that he was reasonably satisfied that the appellant was guilty of the charged offenses. In fact, the record indicates that the trial judge considered the fact that the appellant had been charged with an offense to be a sufficient basis for the revocation."
Thus, this cause is remanded to the circuit court for that court to file an adequate written statement. A return shall be filed with this court within 28 days of the date of this opinion.
REMANDED WITH DIRECTIONS.
All Judges concur, except COBB, J., who is not sitting.