On May 11, 2006, Terry Turner pleaded guilty to first-degree criminal mischief, a violation of § 13A-7-21, Ala. Code 1975, and third-degree theft of property, a violation of § 13A-8-5, Ala. Code 1975. On his conviction for criminal mischief, Turner was sentenced as a habitual felon "under the Split Sentence Act to [20] years in the penitentiary with [3] years to serve in the Montgomery County Punishment and Corrections Program and to be supervised for 3 years by Probation and Parole after the split portion has been served for the remainder for his/her sentence." (CR. 2.) On his conviction for third-degree theft of property, Turner was sentenced to one year in the Montgomery County Punishment and Corrections Program.[1]
These sentences were to be served concurrently.
On July 21, 2006, Turner was brought before the sentencing court to receive notice of an alleged probation violation. Present at the proceeding were Turner and Steve Tate, a community corrections officer. The proceeding began with the sentencing court informing Turner that he had been called to court to be given "notice of alleged probation violations. On July 11th you tested positive for cocaine. Does that ring a bell?" (R. 2.) Turner responded "I haven't used any cocaine." (R. 2.)
The sentencing court then heard from Tate, who, after being sworn, stated that on July 11, 2006, three urine samples taken from Turner tested positive for cocaine. Tate stated that he administered the first urine test. The results of that test were positive for the presence of cocaine. Tate said that because Turner denied that he was using cocaine, he administered another test on that particular urine sample, the results of which were also positive for cocaine. Because Turner continued to deny that he was using cocaine, Tate had Turner provide a second urine sample to be provided to Drug Testing Services.[2] When Drug Testing Services tested the sample, the result was positive for cocaine. Drug Testing Services had Turner provide another urine sample, which also tested positive. That urine sample was then transferred to LabCorp, an off-site testing facility, to be tested in its laboratory. The results from LabCorp had not been received by the court as of the July 21, 2006, proceeding.
Based on the results of the July 11 drug tests, the sentencing court accused Turner of violating the terms of his probation by ingesting cocaine. Turner repeatedly asserted to the sentencing court that he was "not saying that the tests were wrong, but [that he had not] used any cocaine." (R. 3.) The sentencing court asked Turner to explain how "did it get in your system?" (R. 3.) Turner opined that because he was living at his aunt's home, and his cousin used cocaine inside the house, that he had somehow unknowingly absorbed or ingested *Page 446 
cocaine into his body. Turner explained to the court that "the only way [he] kn[ew that he] could have got[ten cocaine] in [his] system is [by] touching something" or from a "pork chop" that he ate after he had laid it "on top of [his cousin's] TV." (R. 6.) According to Turner, "that's the only way [he] kn[ew] [cocaine] could have got[ten] in[to his] system." (R. 6.) At Turner's request, the court made an off-the-record telephone call to Turner's aunt, Mamie Lee Mack, in order for his aunt to vouch for his assertion that he had not taken any cocaine. According to the sentencing court, Turner's aunt stated: "Judge, if he tested positive four times, he had to have done something." (R. 9.) Nevertheless, Turner continued to vehemently deny taking cocaine, stating, "I haven't used no cocaine since I've been out. I haven't used cocaine since 2003 when me and my wife broke up." (R. 11.)[3]
The sentencing court stated that because Turner was "denying so much" it was going to adjourn the proceedings until the results of the LabCorp test could be obtained "to totally confirm it so there's no question." (R. 17.)
On July 24, 2006, the proceeding resumed. The sentencing court began by stating, "We got the results from the lab. I talked to Eric, [4] and it was positive, Terry. So now we've got four positives for cocaine. . . . [And] testing positive for drugs is a violation of community corrections, and one violation, you're gone." (R. 23-24.)
Turner stated that he was not "disputing" the lab results, but asserted that he did not use cocaine and that he did not "know how the cocaine got in [his] system." (R. 24, 25.) Turner concluded by stating to the court that if there was cocaine in his system he "didn't put it there." (R. 25.)
Because the sentencing court found that Turner had ingested cocaine in violation of the terms of his probation, the court revoked Turner's split sentence and reinstated the 20-year sentence.
On August 1, 2006, Turner filed a pro se "Motion for a New Sentencing Hearing." (CR. 5.) In this motion, Turner asserted that he was denied the assistance of counsel[5] in the prior proceedings, and he sought a new probation hearing in which he would be afforded the assistance of appointed counsel. He asserted that without counsel he had been unable to defend *Page 447 
himself in the prior proceedings and that the sentencing court had improperly revoked his probation because, he claimed, the urine tests used to revoke his probation were unreliable, because drug protocol procedures were not followed and because the chain of custody for the sample tested by LabCorp was not established. He further claimed that he had no expert witness to testify on his behalf. On August 8, 2006, the sentencing court denied Turner's motion. This appeal followed.
On appeal, Turner asserts the following: 1) that he was denied the right to counsel; 2) that he was not provided with written notice of the alleged probation violations; 3) that he was not given the opportunity to cross-examine witnesses; 4) that he was not given the opportunity to summon witnesses and to present evidence in his own behalf; and 5) that he was not informed he could request a continuance.
Our review of the record discloses that the sentencing court failed to discern, pursuant to Rules 27.5(a)(3) and 27.6(b), Ala. R.Crim. P., whether representation by counsel was necessary. Although a probationer does not have an unqualified right to counsel at a probation-revocation hearing, Coon v.State, 675 So.2d 94, 95 (Ala.Crim.App. 1995), it is incumbent upon the sentencing court to determine whether the probationer has such a right before revoking probation.
 `"[T]here is no automatic right to counsel in a probation revocation proceeding.' Law v. State, 778 So.2d 249, 250 (Ala.Crim.App. 2000) (citing Spence v. State, 766 So.2d 206, 207
(Ala.Crim.App. 1999)). Whether a probationer is entitled to counsel is determined on a case-by-case basis. See Law, 778 So.2d at 250; Armstrong v. State, 294 Ala. 100, 312 So.2d 620 (1975)."
Gibbons v. State, 882 So.2d 381, 382
(Ala.Crim.App. 2003).
Rule 27.5(a)(3), Ala. R.Crim. P., states that at the initial appearance, the sentencing court shall "[a]dvise the probationer of his or her right to request counsel and appoint counsel to represent an indigent probationer if the requirements of Rule 27.6(b) are met." Rule 27.6(b), Ala. R.Crim. P., addressing when a probationer is entitled to representation by counsel, provides, in pertinent part:
 "Counsel will be appointed to represent an indigent probationer upon request:
 "(1) If the probationer makes a colorable claim that the probationer has not committed the alleged violation of the conditions or regulations of probation or the instructions issued by the probation officer; or
 "(2) Even when the violation is a matter of public record or is uncontested, if there are substantial reasons that justify or mitigate the violation and that may make revocation inappropriate, and the reasons are complex or otherwise difficult to develop or present."
In Lanier v. State, 849 So.2d 994 (Ala.Crim.App. 2002), when the record failed to indicate that the trial court had made an initial determination as to whether the appellant would have been entitled to counsel, this Court remanded the case for the trial court to make such a determination. In that case, the appellant denied committing the violations. Therefore, we refused to say that the trial court's omission was harmless. Likewise, in Donaldson v. State, [Ms. CR-05-1256, December 20, 2006] ___ So.2d ___ (Ala.Crim.App. 2006), this Court remanded the case for the trial court to determine whether the appellant was entitled to appointed counsel when the record reflected that the appellant may have had a colorable claim he did not commit the alleged violations or may have *Page 448 
had substantial reasons to justify or mitigate the violations.
In this case, the record does not establish that Turner was apprised of whether he had a right to counsel or that the court made an initial determination as to whether Turner was entitled to have appointed counsel. Turner did not admit to having used drugs. As in Lanier, we refuse to say here that the trial court's omission was harmless. Accordingly, we remand this case with instructions for the circuit court to make specific, written findings as to whether Turner was entitled to have appointed counsel representing him at the revocation hearing. If the court concludes that Turner was entitled to appointed counsel at the revocation hearing, it shall set aside its order revoking Turner's probation and conduct a new revocation hearing in accordance with Morrissey v. Brewer, 408 U.S. 471,92 S.Ct. 2593, 33 L.Ed.2d 484 (1972), Gagnon v.Scarpelli 411 U.S. 778, 93 S.Ct. 1756, 36 L.Ed.2d 656
(1973), Armstrong v. State, 294 Ala. 100,312 So.2d 620 (1975), and Rule 27, Ala. R.Crim. P. If the court determines that Turner was not entitled to appointed counsel in the proceedings, it should set forth its findings in a written order.
The circuit court shall take all necessary action to ensure that the circuit clerk makes due return to this court at the earliest possible time and within 56 days from the date of this opinion. The return to remand shall include the circuit court's written findings of fact and a transcript of any remand proceedings conducted by the court.
REMANDED WITH INSTRUCTIONS.*
WISE, J., concurs. BASCHAB, P.J., and McMILLAN, SHAW, and WELCH, JJ., concur in the result.
[1] The Montgomery Community Corrections Program is one of several such programs in the State. The program provides sanctions that lie somewhere between prison and routine probation with respect to their restrictiveness.
[2] We presume that "Drug Testing Services" is an in-house drug-testing facility located where Tate works. However, the record does not state this.
[3] Also at the July 21, 2006, proceeding, the court asked Turner if he had complied with other terms of his placement on the Montgomery County Punishment and Corrections Program. Those terms included: "Avoid persons or places of disreputable or harmful character"; "work faithfully at suitable employment as far as possible"; and complete "50 hours of community service." (CR. 2.) Turner admitted that he lived in the same house with his cousin, who, according to Turner, was on probation for a criminal offense and who used illegal drugs in Turner's presence. Turner's supervisor, Tate, stated that Turner had not fulfilled the condition of his probation requiring that he obtain a job. Tate also stated that, at that time, Turner had completed only 20 hours of community service, but in Tate's opinion. Turner should have completed all the required 50 hours of community service by July 21, 2006. The transcript reflects that the sentencing court revoked Turner's probation because the presence of cocaine was detected in his urine. However, the sentencing court also noted that Turner was "not even working" and that he "could've gotten those [community service] hours finished easy . . . [b]ut [he wasn't] doing it." (R. 19.)
[4] As best we can discern from the record, "Eric" is a LabCorp employee.
[5] Turner asserted that "on the morning of sentencing [I] asked the trial court where was [my] lawyer. The trial court asked [me] did [I] pa[y] [my] lawyer and proceeded to sentence [me]." (CR. 7.)
* Note from the reporter of decisions: On September 21, 2007, on return to remand, the Court of Criminal Appeals dismissed the appeal, without opinion. *Page 1072