JOINER, Judge.
Keith R. Kiker appeals the circuit court's decision to revoke his probation. We remand with instructions.
Facts and Procedural History
On February 21, 2000, Kiker pleaded guilty in the Cleburne Circuit Court to attempted murder, see §§ 13A-4-2 and 13A-6-2, Ala.Code 1975, and to discharging a firearm into an occupied vehicle, see § 13A-11-61(b), Ala.Code 1975. The circuit court sentenced Kiker to 20 years' imprisonment on each conviction, to be served concurrently; that sentence was split and Kiker was ordered to serve 5 years' imprisonment, followed by 15 years' probation. The supervision of Kiker's probation *248 was transferred to Haralson County, Georgia.
On August 28, 2015, Kiker was arrested in Haralson County, Georgia and charged with five counts of making terroristic threats, see Ga.Code Ann. § 16-11-37, one count of false imprisonment, see Ga.Code Ann. § 16-5-41, and one count of simple battery, see Ga.Code Ann. § 16-6-23. Kimberly Willingham, Kiker's probation officer, then filed a delinquency report alleging that Kiker had violated the terms and conditions of his probation because he had committed new offenses in Georgia. Thereafter, Kiker was transported from Haralson County, Georgia, to the Cleburne Circuit Court for a hearing on his alleged probation violations.
At the outset of the hearing, the following exchange occurred:
"The Court: All right. Mr. Kiker, a delinquency report has been filed against you by Ms. Willingham, who is your probation officer, alleging that you have committed new offenses and based on that she asked me to have a hearing to determine your probation. The State bears the burden of reasonably satisfying me by the evidence of whether or not you committed a new offense, then I have the authority to revoke your probation.
"....
"Okay. Would you like to have a hearing here today?
"[Kiker]: I'd like my witness, my fiancée, Carol Bartholow, she has bi-polar episodes with psychosis. And that was nothing uncommon that day she instigated that and our neighbors-we've also been neighbors. And not many things I did in my own yard. They hit a woman, they call the law. If somebody gets hit-just like in Georgia somebody is going to jail; correct?
"The Court: What we're here on today are several charges, the fact that you made terroristic threats involving your neighbors out of Georgia for threatening them with-in some way so even if your witness wasn't here to verify whether or not on the domestic-violence charge on assault or whatever if the State chose they could go forward on making terroristic threats.
"[Kiker]: My witness had a pencil in her hand, and I went to open the door and a 6 foot 300 pound guy slammed the door and hit me in the face, and I thought I was being attacked.
"The Court: I assume they're going to call witnesses. You'll have the opportunity to cross-examine any witnesses.
"[Kiker]: Without Ms. Bartholow today?
"The Court: If you want to have a hearing, you got to go through with the hearing today.
"[Kiker]: My whole-I have nine pages of legal pages written at home in my defense.
"[Prosecutor]: If I understand, the lady he's referring to is the victim in the assault and battery. It's my understanding she's in the hospital.
"[Kiker]: As I said, that's because she had a bi-polar episode; correct?
"[Prosecutor]: I couldn't-
"[Kiker]: This lady, I love her, stabbed herself six times in seven years. That's sad. She's never hurt no one but herself. But she has a sick disease, bi-polar. And she has these episodes with psychosis.
"The Court: So, [Prosecutor], are you going forward on what charges or what new offenses today?
"[Prosecutor]: Making terroristic threats, five counts; simple battery; false imprisonment; aggravated assault *249 and battery; simple assault and battery; possession of dangerous or deadly weapon out of Haralson County, Georgia.
"The Court: All right. You want to have a hearing?
"[Kiker]: Not without Ms. Bartholow. Will I be released?
"The Court: No. You'll go to prison.
"[Kiker]: If I don't do this today? I'm confused.
"The Court:.... If they show me you've committed any offense whatsoever ... I have the authority to revoke your probation.
"[Kiker]: I never left my porch. By the way, my truck was about eight feet off my porch, and I have to walk off my porch, which I never left my porch.
"The Court: They've got witnesses to testify to determine whether or not you ever left your porch or not. Whatever you want to do, Mr. Kiker.
"[Kiker]: Her daughter-in-law was in my yard. They was hitting the house somewhere on and I said, 'This my domain.'
"The Court: Mr. Kiker, you'll have an opportunity to testify to anything you want. You can cross-examine the witnesses. The question I have simply is: Do you want to have a hearing?
"[Kiker]: I'm just scared without a jury.
"The Court: On a probation-revocation hearing you're not entitled to a jury.... If you waive your hearing, I'll go ahead and revoke your probation and send you to prison. If somehow or another you beat these cases or get acquitted, you can file a motion for me to reconsider your revocation of probation and they would be the basis for the-
"[Kiker]: I've read the statement he's given, and got in my face and made me get in the house. It's my domain and I'll stay in my house.
"The Court: I'm going to go back to the same question. You can testify after you present evidence. If you want to have a hearing-
"[Kiker]: I'm trying to remember. Like I said, I've written legal pages, and it's on my kitchen table. I remember-
"....
"The Court: Why do you need these nine pages? You can go forward today.
"....
"Mr. Kiker, do you want to have a hearing?
"[Kiker]: Yes, sir."
(R. 2-8.) Thereafter, the hearing proceeded with Kiker acting pro se.
During the hearing, the State called several witnesses to testify to the circumstances surrounding the alleged newly committed offenses. Additionally, Kiker testified in his own behalf. Kiker's testimony, however, merely consisted of beginning to explain his version of events-ostensibly denying that he had done anything wrong-followed quickly by the statement "I wanted to say something, but I don't know if it's getting across." (R. 42.) Thereafter, Kiker accused the husband of a State witness of being a "confidential informant because they had like 50 cars a day" at their house. The circuit court then stated on the record:
"Okay. Mr. Kiker, I find you did violate the terms and conditions of your probation by committing a new offense of making [a] terroristic threat, I hereby revoke your probation. If for some reason these cases are dropped all of them and you're exonerated, you can file a *250 motion for me to reconsider and I'll do so at that time."
(R. 43-44.)
After the hearing, the circuit court memorialized its findings in a written order, finding, in part:
"Upon consideration of the evidence presented by the State, the Court is reasonably satisfied from the evidence that a violation of the conditions or regulations of probation occurred, two [sic] wit: committing a new offense for Making a Terroristic Threat in Haralson County, Georgia.
"The Court hereby revokes [Kiker's] probation and sentences [him] to serve his remaining sentence with a total of 3 days jail credit."
(C. 26.) Kiker then filed a timely notice of appeal challenging the circuit court's decision to revoke his probation.
On appeal, Kiker contends, among other things, that the circuit court erred when it failed to advise him "of his right to request counsel to represent him during the revocation proceedings."[1] (Kiker's brief, p. 4.)
This Court has explained, that
"[a]lthough a probationer does not have an unqualified right to counsel at a probation-revocation hearing, Coon v. State, 675 So.2d 94, 95 (Ala.Crim.App.1995), it is incumbent upon the sentencing court to determine whether the probationer has such a right before revoking probation.
" ' "[T]here is no automatic right to counsel in a probation revocation proceeding." Law v. State, 778 So.2d 249, 250 (Ala.Crim.App.2000) (citing Spence v. State, 766 So.2d 206, 207 (Ala.Crim.App.1999) ). Whether a probationer is entitled to counsel is determined on a case-by-case basis. See Law, 778 So.2d at 250 ; Armstrong v. State, 294 Ala. 100, 312 So.2d 620 (1975).'
" Gibbons v. State, 882 So.2d 381, 382 (Ala.Crim.App.2003).
" Rule 27.5(a)(3), Ala. R.Crim. P., states that at the initial appearance, the sentencing court shall '[a]dvise the probationer of his or her right to request counsel and appoint counsel to represent an indigent probationer if the requirements of Rule 27.6(b) are met.' Rule 27.6(b), Ala. R.Crim. P., addressing when a probationer is entitled to representation by counsel, provides, in pertinent part:
" 'Counsel will be appointed to represent an indigent probationer upon request:
" '(1) If the probationer makes a colorable claim that the probationer has not committed the alleged violation of the conditions or regulations of probation or the instructions issued by the probation officer; or *251 " '(2) Even when the violation is a matter of public record or is uncontested, if there are substantial reasons that justify or mitigate the violation and that may make revocation inappropriate, and the reasons are complex or otherwise difficult to develop or present.'
"In Lanier v. State, 849 So.2d 994 (Ala.Crim.App.2002), when the record failed to indicate that the trial court had made an initial determination as to whether the appellant would have been entitled to counsel, this Court remanded the case for the trial court to make such a determination. In that case, the appellant denied committing the violations. Therefore, we refused to say that the trial court's omission was harmless. Likewise, in Donaldson v. State, 982 So.2d 609 (Ala.Crim.App.2006), this Court remanded the case for the trial court to determine whether the appellant was entitled to appointed counsel when the record reflected that the appellant may have had a colorable claim he did not commit the alleged violations or may have had substantial reasons to justify or mitigate the violations.
"In this case, the record does not establish that Turner was apprised of whether he had a right to counsel or that the court made an initial determination as to whether Turner was entitled to have appointed counsel. Turner did not admit to having used drugs. As in Lanier, we refuse to say here that the trial court's omission was harmless."
Turner v. State, 981 So.2d 444, 447-48 (Ala.Crim.App.2007).
Here, as was the case in Lanier v. State, 849 So.2d 994 (Ala.Crim.App.2002), Donaldson v. State, 982 So.2d 609 (Ala.Crim.App.2006), and Turner, the record on appeal demonstrates that the circuit court neither informed Kiker that he had the right to request counsel nor determined whether Kiker was entitled to have counsel appointed to him. Additionally, as was the case in Lanier, Donaldson, and Turner, the record on appeal demonstrates that Kiker denied having committed the alleged probation violations or, at least, appears to demonstrate that Kiker "may have had substantial reasons to justify or mitigate the violations."[2] Donaldson, 982 So.2d at 611. Thus, as was the case in Lanier, Donaldson, and Turner, "we refuse to say here that the [circuit] court's omission was harmless." Turner, 981 So.2d at 448.
In accordance with Lanier, Donaldson, and Turner, we remand this case to the circuit court for that court to make specific, written findings of fact as to whether Kiker was, in fact, entitled to have counsel appointed to represent him during the probation-revocation hearing. If it determines that Kiker was entitled to have counsel appointed to represent him during the probation-revocation hearing, the circuit *252 court shall set aside its order revoking Kiker's probation and conduct a new probation-revocation hearing. If a new probation-revocation hearing is conducted, the circuit court should ensure that it complies with the due-process requirements set forth in Morrissey v. Brewer, 408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972) ; Gagnon v. Scarpelli, 411 U.S. 778, 93 S.Ct. 1756, 36 L.Ed.2d 656 (1973) ; Armstrong v. State, 294 Ala. 100, 312 So.2d 620 (1975) ; and Rule 27, Ala. R.Crim. P.
On remand, the circuit court shall take all necessary action to see that the circuit clerk makes due return to this court at the earliest possible time or within 56 days after the release of this opinion. Additionally, on return to remand the record must include the circuit court's specific, written findings of fact and a transcript of any proceedings conducted on remand.
REMANDED WITH INSTRUCTIONS.*
WINDOM, P.J., and WELCH, KELLUM, and BURKE, JJ., concur.

Although Kiker raises this claim for the first time on appeal, this Court has recognized as an exception to the general rules of preservation and waiver in a probation-revocation proceeding a claim that the circuit court failed to advise the defendant of his right to request counsel. See Law v. State, 778 So.2d 249, 250 (Ala.Crim.App.2000) ( "[F]undamental fairness mandates that we address the merits of Law's contention that he was not informed of his right to counsel. As the United States Supreme Court noted in Gagnon v. Scarpelli, 411 U.S. 778, 93 S.Ct. 1756, 36 L.Ed.2d 656 (1973), situations exist in which a probationer, if not represented by counsel, may not receive the protections guaranteed by Morrissey v. Brewer, 408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972), in probation revocation proceedings."). Thus, this claim is properly before this Court for appellate review.

For example, although the circuit court concluded that it was reasonably satisfied that Kiker had violated the terms and conditions of his probation for committing the offense of making a terroristic threat, that charge stemmed from Kiker's threatening his neighbor with a crossbow, which, according to Kiker, occurred only because his neighbor came to his house, "slammed the door and hit [him] in the face, and [he] thought [he] was being attacked." (R. 3.) In other words, Kiker argued, pro se, that he acted while on his own property and in his own defense. Additionally, the record demonstrates that Kiker was sentenced in 2001 for the original offenses underlying his probation-revocation proceeding, and, although it is not clear from the record on appeal, it appears that Kiker had served at least 10 years of his 15-year probationary term at the time his probation officer filed the delinquency report in this case-reasons that appointed counsel, if he is indeed entitled to have counsel appointed, could certainly argue "mitigate" the alleged probation violations.

Note from the reporter of decisions: On October 13, 2016, on return to remand, the Court of Criminal Appeals dismissed the appeal, without opinion.