JOINER, Judge.
Mark Caleb English appeals his probation revocation. We reverse and remand.
In September 2010, English pleaded guilty to third-degree burglary, see § 13A-7-7, Ala.Code 1975, and first-degree theft of property, see § 13A-8-3, Ala.Code 1975. English was sentenced to 15 years’ imprisonment on each conviction; the sentences were to be served concurrently. Furthermore, English’s sentences were split, and English was ordered to serve two years in the “Front End Diversion Program” at Mobile Community Corrections, followed by three years’ probation. In January 2011, English pleaded guilty to second-degree theft of property, see § 13A-8-4, Ala.Code 1975. English was sentenced to 20 years’ imprisonment, which was split so English would serve 3 years in the “Front End Diversion Program” at the Mobile Community Corrections; that sentence was suspended, and English was ordered to serve five years’ probation. The sentence was to run concurrently with English’s other sentences.
On March 28, 2014, English’s probation officer filed in the circuit court a delinquency report alleging that English had violated the terms of his probation by being arrested on new offenses — specifically, two counts of first-degree receiving stolen property, two counts of second-degree receiving stolen property, and one count of first-degree theft of property — as well as failing to pay court costs and supervision fees. (C. 62.) A probation-revocation hearing — at which English was represented by appointed counsel — was held on April 15, 2014.
At the hearing, the State offered the testimony of three witnesses.
Fred Dixon, an employee with Mobile Community Corrections, testified that he was not English’s probation officer but that he was one of the keepers of the correctional records, and the records reflected that English had been informed of the rules and conditions of being an inmate on front-end diversion.
Lorraine Bonine, an alleged victim, testified that on February 21, 2014, she came home and discovered that her open-bed trailer was missing from her driveway. Bonine testified that the value of the trailer was $1,000 and that she had not given anyone permission to take the trailer. Bo-nine could not identify English as someone she knew or had ever met.
The State’s final witness, Assistant Police Chief Gary Davis, an employee with the City of Creóla, testified to the following: On February 22 and 23, 2014, three complaints were reported and filed with the Creóla Police Department. Those complaints included the theft of Bonine’s trailer, the burglary of William Croon’s residence, and the theft from a residence belonging to William English, English’s cousin. English was developed as a suspect after he was observed taking scrap from one of the alleged victims. With that information, Davis contacted Alter Scrap Yard in Chickasaw and learned that English had sold scrap, including phone boxes, bicycle frames, and old lawn mowers at the scrap yard. Davis received photographs and receipts of the scrap that En *629 glish had sold to the scrap yard. In the photographs, English was shown driving a silver Toyota pickup truck. Davis also received a copy of a $676.39 check representing the amount the scrap yard had paid English for a trailer and the scrap.[1]
On February 24, Davis interviewed George Reed, Croon’s neighbor, who stated that he saw a truck matching the description of a truck driven by English pulling a trailer that was backed up to Croon’s residence. Reed also stated to Davis that at the same time a white male was walking back and forth on Croon’s property. Davis then interviewed Christina Roberts, William English’s sister-in-law, who stated that she had seen English driving a silver truck pulling a black trailer that fit the description of Bonine’s trailer. Afterward, Zack English, English’s brother, contacted Davis and stated that he had found the trailer English had stolen and that it was at a residence in Wilmer belonging to Nathan Fields. Fields contacted Davis and stated that English had brought the trailer to his house. Davis recovered the trailer from Field’s residence and discovered that its VIN number had been scratched off and the tag removed. Bonine later identified the trailer as belonging to her. Davis also recovered several items loaded on the trailer including a generator, a push mower, a “Metabo” grinder, a blue “Job Box,” an attic fan, and a weed eater. Croon identified the items on the trailer as some of the items that had been reported stolen from his residence. Davis also showed Croon one of the photographs taken at the scrap yard and determined that some of the items piled on the trailer in the photograph belonged to Croon. Davis testified that to sell scrap, a person must present a photo identification and that English had presented his photo identification when he sold some of the stolen items as scrap.
Davis also testified that Croon stated that he had been contacted by Zack English who told him that he had several of Croon’s items sitting in the back of a truck parked at Zack English’s residence. The truck parked at Zack English’s residence matched the description of English’s truck.
On February 25, Davis went to William English’s residence and showed him photographs of the scrap from the scrap yard. William English identified the carbon-steel boxes, car parts, telephone boxes, and lawn mowers as belonging to him.
Based on his investigation, Davis issued warrants to arrest English for the theft of Bonine’s trailer, as well as for the theft of property from William Croon and William English.
Following the hearing, the circuit court entered an order revoking English’s probation. The order, in relevant part, states:
“The Court is reasonably satisfied that the defendant violated the rules of Front End Diversion and terms and conditions of probation in that he committed offenses of receiving stolen property, theft of property at leas[t] in the second degree, and multiple cases of receiving. Therefore, the Court orders a full remand and revocation, for the defendant to complete the balance of his sentences with the Department of Corrections.”
(C. 59-60.) English appeals.
On appeal, English argues that the circuit court erred by revoking his probation based solely on hearsay evidence pursuant to Ex parte Dunn, 163 So.3d 1003 (Ala.2014). English argues that “there is no evidence to corroborate the hearsay testi *630 mony of Assistant Chief Davis, which is the only evidence supporting the Trial Court’s decision.” (English’s brief, p. 18.)
In Dunn, the appellant argued that “the only evidence connecting the clothing to the burglary for which Dunn’s probation was sought to be revoked was hearsay” and that “the trial court’s decision was based entirely on hearsay and the Court of Criminal Appeals’ affirmance of that decision conflicts with Goodgain [v. State, 755 So.2d 591 (Ala.Crim.App.1999)].” 163 So.3d at 1004. The Alabama Supreme Court agreed with Dunn and stated:
“In Goodgain, the defendant, William Lindsey Goodgain, appealed the revocation of his probation, arguing that it was based on hearsay evidence that he had committed a new criminal offense of robbery. The Court of Criminal Appeals noted:
“‘At the revocation hearing, the State presented one witness: Gregory Johnson, a detective with the Birmingham Police Department. Detective Johnson testified that on December 13, 1998, he received an offense report prepared by an unidentified officer regarding a robbery that had allegedly occurred on December 12, 1998. According to Detective Johnson, the offense report indicated that the victim of the robbery had stated that Goodgain and another individual had come to her home and had robbed her a gunpoint, taking $500 in cash and a necklace. Detective Johnson stated that after he received the offense report, he conducted a live lineup and a photographic lineup as part of his investigation of the robbery. He testified that the victim identified Goodgain in the live lineup, and the victim’s daughter, who was present during the robbery, identified Good-gain in the photographic lineup. Detective Johnson said that on December 17, 1998, he obtained an arrest warrant for Goodgain for the crime of robbery in the first degree. No other evidence was offered at the hearing to support the allegation in the probation officer’s delinquency report. At the time of the revocation hearing, Good-gain had yet to be tried on the robbery charge.’
“755 So.2d at 592.
“The Court of Criminal Appeals stated: ‘ “It is not necessary in a probation revocation hearing to provide proof beyond a reasonable doubt or by a preponderance of the evidence. Rather, the lower court need only be ‘reasonably satisfied from the evidence that the probationer has violated the conditions of his probation.’ ” ’ 755 So.2d at 592 (quoting Mitchell v. State, 462 So.2d 740, 742 (Ala.Crim.App.1984), quoting in turn Armstrong v. State, 294 Ala. 100, 103, 312 So.2d 620, 623 (1975)). However, the Court of Criminal Appeals also stated: ‘[H]earsay evidence may not form the sole basis for revoking an individual’s probation.... “The use of hearsay as the sole means of proving a violation of a condition of probation denies a probationer the right to confront and to cross-examine the persons originating information that forms the basis of the revocation.” ’ 755 So.2d at 592 (quoting Clayton v. State, 669 So.2d 220, 222 (Ala.Crim.App.1995)).
“The Court of Criminal Appeals in Goodgain determined that ‘the only evidence that Goodgain violated his probation by committing another crime was Detective Johnson’s hearsay testimony regarding the statements of the robbery victim contained in the offense report and regarding the lineup identifications of Goodgain by the victim and her *631 daughter.’ Goodgain, 755 So.2d at 592. The Court of Criminal Appeals concluded:
“ ‘Because the State failed to present any evidence, other than the hearsay testimony of Detective Johnson, indicating that Goodgain had, in fact, committed the alleged robbery, the trial court erred in revoking Good-gain’s probation. Accordingly, the trial court’s order revoking Goodgain’s probation is reversed and this cause is remanded for the court to hold another revocation hearing.’
“755 So.2d at 593.”
Dunn, 163 So.3d at 1005.
The Alabama Supreme Court then held:
“Here, the State acknowledges that it ‘relied on hearsay evidence’ in the revocation hearing, but it argues that ‘it corroborated the hearsay evidence when it relied on nonhearsay evidence — Gibbons’s testimony regarding the testing that she performed on the blood sample that ultimately matched Dunn’s profile that was stored in a database containing DNA profiles from felons and misdemeanors throughout the state.’ State’s brief, at 11. However, the State provided no nonhearsay evidence, from Gibbons or anyone else, as to where the pants from which the blood sample was taken were found or connecting those pants to the robbery. Gibbons testified that the evidence-submission form indicated that ‘there was clothing that was found discarded along with [Olensky’s] stolen property next door from the scene,’ but she had no personal knowledge of that discovery. Detective Shi-rey testified that Officer McKinley had found the pants, but Detective Shirey had no personal knowledge as to where they had been found. No testimony from Officer McKinley was offered at the revocation hearing. Thus, as was the case in Goodgain, the only evidence connecting Dunn to the alleged commission of the robbery was hearsay evidence.
[[Image here]]
“As noted previously, the State has not corroborated by nonhearsay evidence the hearsay evidence connecting the pants, and by extension Dunn, to the burglary. Thus, as in Goodgain, ‘the State failed to present any evidence, other than the hearsay testimony of Detective [Shirey], indicating that [Dunn] had, in fact, committed the alleged [burglary],’ 755 So.2d at 593, and the Court of Criminal Appeals’ decision, affirming the trial court’s judgment, conflicts with Goodgain. For the foregoing reasons, we reverse the Court of Criminal Appeals’ judgment and remand the cause for further proceedings consistent with this opinion.”
163 So.3d 1006. Based on the Alabama Supreme Court’s holding in Dunn, we must agree with English’s argument that the State has not presented any nonhear-say evidence to corroborate the hearsay testimony of Assistant Chief Davis.[2] The only evidence connecting English to the alleged burglary and thefts was the hearsay testimony of Assistant Chief Davis. Accordingly, we reverse the circuit court’s order revoking English’s probation, and we remand the case to the circuit court for *632 proceedings consistent with the Alabama Supreme Court’s opinion in Ex parte Dunn, supra.
REVERSED AND REMANDED.
WINDOM, P.J., and WELCH and KELLUM, JJ., concur.
BURKE, J., dissents, with opinion.

. On cross-examination, Davis admitted that Bonine’s trailer was not the trailer that had been sold at the scrap yard.

. In his dissenting opinion, Judge Burke notes that "Davis identified some of the items being hauled by the truck in the photograph as some of the items that had been reported to him as stolen.” 164 So.3d at 635. Just as Gibbons’s testimony in Dunn regarding where the pants were found was based solely on hearsay, however, Davis’s testimony that the items in the photograph were the items that were reported stolen was based solely on hearsay.