WELCH, Judge.
*71 Zachary Wayne Weatherford appeals the revocation of his probation by the Madison Circuit Court. On February 4, 2016, Weatherford was convicted of the unlawful manufacture of a controlled substance in the second degree. See § 13A-12-217, Ala. Code 1975. He was sentenced to 60 months in prison. His sentence was suspended, and Weatherford was placed on three years' probation. On February 24, 2017, Probation Officer Rachel Murrill filed a delinquency report alleging that Weatherford had violated the terms and conditions of his probation by committing the new offense of first-degree kidnapping[1] and by failing to avoid injurious or vicious habits.
The trial court held a probation-revocation hearing at which the State presented testimony from two witnesses: Investigator Gary Gilbert of the Huntsville Police Department and Probation Officer Murrill. Inv. Gilbert testified that he was contacted regarding an assault victim at the Madison Hospital emergency room. When he arrived at the hospital, he saw Erica Green Barnes. She had scratches on the right side of her temple and swelling around her left eye. Inv. Gilbert testified that the left side of Barnes's head near her hairline was swollen and that she had a "busted lip and ligature marks around her ankles." (R. 7.) Inv. Gilbert testified that Barnes told him that
"[s]he had recently got back together with the ex-boyfriend, Mr. Weatherford, even though they had a prior domestic violence incident back on Black Friday of last year.
"The last few days they had been riding around. She said Mr. Weatherford was on a high from methamphetamine and they had been traveling back and forth from that address on Ryland Pike in Madison County back to Huntsville.
"Earlier in the day, about the last four hours, they were riding around the back roads in his pickup truck. He made statements that he would kill her because she no longer wanted to be in a relationship with him.
"He asked her how she would like to die, it could be by overdose, stab her, run her over with his truck.
"He bound her feet together with a phone charger cord and was stabbing the seat of the truck with a knife.
"She recalls seeing street signs on Wall Triana, County Line Road, which that puts her in the Huntsville City limits is the area we have there.
"They eventually stopped at Fuel City on Swancot Road and she said Mr. Weatherford kind of dozed off, fell asleep. She got the knife and cut the cord from around her ankles and ran into the store.
"I was able to view the video from the store. It does show a gold F150 pickup pull up to the pumps and sits there for about 10 or 15 minutes.
"A female gets out of the passenger's side and runs inside the store. A male gets out of the truck and then gets back in the truck and drives off."
(R. 8-9.) Inv. Gilbert could not tell from the video whether Weatherford was the male in the video.
*72 Officer Murrill testified that she was informed of the allegation and contacted Weatherford "to try and see what was going on and see if he would come and talk to [her] about it and explain it." (R. 15.) Weatherford told her that "he got into an argument with Miss Barnes and that he slapped her but that it would be at most an assault third charge." (R. 16.) Weatherford stated that Barnes may have hit him back.
Following the testimony, defense counsel argued that the evidence was insufficient because, he said, the only evidence connecting Weatherford to the offense was hearsay. After hearing arguments from both parties, the circuit court stated:
"And this is the way I see this case, you have the statement of the victim, which is entirely hearsay.
"The officer has corroborated that when he interviewed the victim finding the exact types of multiple injuries-this is not just standard injuries, but all kinds of different injuries to her that he can physically see which corroborate the testimony that she said as to the way the Defendant in this case harmed her.
"And then the second amount of corroborating testimony is the officer's seeing the video that confirms the location where this lady said she was let back out at the service station. He couldn't tell whether that was him, but that further corroborates her hearsay testimony.
"And, finally, you have the testimony of Officer Murrill in which the Defendant admits to an altercation in which he at least slapped the victim in this case. And we don't know about, you know, whether she slapped him in self-defense.
"But when you put all of those together, that is sufficient to corroborate the victim's testimony.
"The Court finds that the Defendant violated the terms and conditions of his probation as to Charge One, kidnapping first, terror adult.
"As to failure to avoid injurious or vicious habits, normally this has to do with drugs, I find for the Defendant. I just don't think that is a proper charge on that one.
"The Defendant's probation is revoked, he is remanded to the Department of Corrections to serve the balance of his sentence."
(R. 22-23.) The circuit court also entered a written order of revocation. This appeal follows.
On appeal, Weatherford argues that the evidence was insufficient to support the revocation of his probation. Specifically, he claims that his probation was revoked solely on hearsay evidence. In support of his argument, Weatherford cites Ex parte Dunn, 163 So.3d 1003 (Ala. 2014).
In Dunn, the appellant argued that the trial court's revocation "was based entirely on hearsay and the Court of Criminal Appeals' affirmance of that decision conflicts with Goodgain [v. State, 755 So.2d 591, (Ala. Crim. App. 1999) ]." 163 So.3d at 1004. The Alabama Supreme Court agreed with Dunn and stated:
"In Goodgain, the defendant, William Lindsey Goodgain, appealed the revocation of his probation, arguing that it was based on hearsay evidence that he had committed a new criminal offense of robbery. The Court of Criminal Appeals noted:
" 'At the revocation hearing, the State presented one witness: Gregory Johnson, a detective with the Birmingham Police Department. Detective Johnson testified that on December 13, 1998, he received an offense report prepared by an unidentified officer regarding a robbery that had allegedly occurred on December 12, 1998. According to Detective Johnson, *73 the offense report indicated that the victim of the robbery had stated that Goodgain and another individual had come to her home and had robbed her at gunpoint, taking $500 in cash and a necklace. Detective Johnson stated that after he received the offense report, he conducted a live lineup and a photographic lineup as part of his investigation of the robbery. He testified that the victim identified Goodgain in the live lineup, and the victim's daughter, who was present during the robbery, identified Goodgain in the photographic lineup. Detective Johnson said that on December 17, 1998, he obtained an arrest warrant for Goodgain for the crime of robbery in the first degree. No other evidence was offered at the hearing to support the allegation in the probation officer's delinquency report. At the time of the revocation hearing, Goodgain had yet to be tried on the robbery charge.'
" 755 So.2d at 592.
"The Court of Criminal Appeals stated: ' "It is not necessary in a probation revocation hearing to provide proof beyond a reasonable doubt or by a preponderance of the evidence. Rather, the lower court need only be 'reasonably satisfied from the evidence that the probationer has violated the conditions of his probation.' " ' 755 So.2d at 592 (quoting Mitchell v. State, 462 So.2d 740, 742 (Ala. Crim. App. 1984), quoting in turn Armstrong v. State, 294 Ala. 100, 103, 312 So.2d 620, 623 (1975) ). However, the Court of Criminal Appeals also stated: '[H]earsay evidence may not form the sole basis for revoking an individual's probation .... "The use of hearsay as the sole means of proving a violation of a condition of probation denies a probationer the right to confront and to cross-examine the persons originating information that forms the basis of the revocation." ' 755 So.2d at 592 (quoting Clayton v. State, 669 So.2d 220, 222 (Ala. Crim. App. 1995) ).
"The Court of Criminal Appeals in Goodgain determined that 'the only evidence that Goodgain violated his probation by committing another crime was Detective Johnson's hearsay testimony regarding the statements of the robbery victim contained in the offense report and regarding the lineup identifications of Goodgain by the victim and her daughter.' Goodgain, 755 So.2d at 592. The Court of Criminal Appeals concluded:
" 'Because the State failed to present any evidence, other than the hearsay testimony of Detective Johnson, indicating that Goodgain had, in fact, committed the alleged robbery, the trial court erred in revoking Goodgain's probation. Accordingly, the trial court's order revoking Goodgain's probation is reversed and this cause is remanded for the court to hold another revocation hearing.'
" 755 So.2d at 593."
Dunn, 163 So.3d at 1004-05.
The Alabama Supreme Court held that
"[t]he State acknowledges that it 'relied on hearsay evidence' in the revocation hearing, but it argues that 'it corroborated the hearsay evidence when it relied on nonhearsay evidence-Gibbons's testimony regarding the testing that she performed on the blood sample that ultimately matched Dunn's profile that was stored in a database containing DNA profiles from felons and misdemeanors throughout the state.' State's brief, at 11. However, the State provided no nonhearsay evidence, from Gibbons or anyone else, as to where the pants from which the blood sample was taken were *74 found or connecting those pants to the robbery. Gibbons testified that the evidence-submission form indicated that 'there was clothing that was found discarded along with [Olensky's] stolen property next door from the scene,' but she had no personal knowledge of that discovery. Detective Shirey testified that Officer McKinley had found the pants, but Detective Shirey had no personal knowledge as to where they had been found. No testimony from Officer McKinley was offered at the revocation hearing. Thus, as was the case in Goodgain, the only evidence connecting Dunn to the alleged commission of the robbery was hearsay evidence.
"....
"As noted previously, the State has not corroborated by nonhearsay evidence the hearsay evidence connecting the pants, and by extension Dunn, to the burglary. Thus, as in Goodgain, 'the State failed to present any evidence, other than the hearsay testimony of Detective [Shirey], indicating that [Dunn] had, in fact, committed the alleged [burglary],' 755 So.2d at 593, and the Court of Criminal Appeals' decision, affirming the trial court's judgment, conflicts with Goodgain. For the foregoing reasons, we reverse the Court of Criminal Appeals' judgment and remand the cause for further proceedings consistent with this opinion."
163 So.3d at 1005-06.
Here, the State acknowledges that it relied on hearsay evidence in the revocation hearing, but it argues that sufficient nonhearsay evidence was presented to connect Weatherford to the offense and to corroborate what the victim said occurred. The State argues that Weatherford's admission that he slapped the victim was nonhearsay evidence that "established that [Weatherford] was in the vehicle with the victim and that he slapped the victim." (State's brief, p. 9-10.) The State also contends that Inv. Gilbert's nonhearsay testimony regarding the victim's injuries "corroborated the injuries the victim said Weatherford inflicted on her." (State's brief, p. 10.) Finally, the State argues that the video surveillance footage viewed by Inv. Gilbert showing the victim escaping from her abductor at the gas station was nonhearsay evidence corroborating the commission of the kidnapping offense. We disagree.
In the instant case, as in Ex parte Dunn and Goodgain, the State presented only hearsay evidence to support a finding that Weatherford had violated the terms and conditions of his probation by committing the new offense of kidnapping. Contrary to the State's assertion, it did not present any nonhearsay evidence corroborating the hearsay testimony of Inv. Gilbert or connecting Weatherford to the offense. Although Inv. Gilbert testified that he had seen the victim's injuries, no nonhearsay evidence was presented indicating that Weatherford caused those particular injuries. Other than the ligature marks around the victim's ankles, Inv. Gilbert never testified that the victim told him how she had sustained the injuries. Even if Weatherford's statement that he had slapped the victim could be connected to those specific injuries, that admission would not connect Weatherford to the crime of kidnapping. The video-surveillance footage also does not connect Weatherford to the crime of kidnapping. Inv. Gilbert could not identify the male in the video and did not testify that the female in the video was the victim. Although the video may tend to corroborate the victim's statement, it does not connect Weatherford to the offense. See English v. State, 164 So.3d 627, 631-32 (Ala. Crim. App. 2014) ("Based on the Alabama Supreme Court's holding in [Ex *75 parte] Dunn [, 163 So.3d 1003 (Ala. 2014) ], we must agree with English's argument that the State has not presented any nonhearsay evidence to corroborate the hearsay testimony of Assistant Chief Davis. The only evidence connecting English to the alleged burglary and thefts was the hearsay testimony of Assistant Chief Davis. Accordingly, we reverse the circuit court's order revoking English's probation, and we remand the case to the circuit court for proceedings consistent with the Alabama Supreme Court's opinion in Ex parte Dunn, supra."); accord Ratliff v. State, 970 So.2d 939, 941-42 (Fla. Dist. Ct. App. 2008) (stating that, " '[w]hile probation may be revoked based on a combination of hearsay and nonhearsay evidence, when the State seeks to revoke probation based on the commission of new offenses, it must present direct, nonhearsay evidence linking the defendant to the commission of the offense at issue,' " and holding that the trial court abused its discretion by revoking the appellant's probation because the State failed to present "non-hearsay evidence establishing the essential elements of the criminal offenses at issue" (quoting Johnson v. State, 962 So.2d 394, 396-97 (Fla. Dist. Ct. App. 2007) )).
Because the State failed to present any nonhearsay evidence to establish that Weatherford had violated the terms and conditions of his probation by committing the alleged kidnapping, the circuit court erred in revoking Weatherford's probation. Accordingly, the circuit court's order revoking Weatherford's probation is reversed and this cause is remanded for further proceedings consistent with this opinion.
REVERSED AND REMANDED.
Windom, P.J., and Kellum, J., concur. Burke, J., dissents, with opinion, which Joiner, J., joins.

Section 13A-6-43(a)(5), the section under which Weatherford was charged, defines first-degree kidnapping as the abduction of another person with the intent to terrorize him or her or a third person.