Rel: August 22, 2025

**Notice:** This opinion is subject to formal revision before publication in the advance sheets of **Southern Reporter**. Readers are requested to notify the **Reporter of Decisions**, Alabama Appellate Courts, 300 Dexter Avenue, Montgomery, Alabama 36104-3741 ((334) 229-0650), of any typographical or other errors, in order that corrections may be made before the opinion is published in **Southern Reporter**.

# Alabama Court of Criminal Appeals

## OCTOBER TERM, 2024-2025

———————————————

### CR-2025-0085

———————————————

**Anteaus Ockzavia Glenn**

**v.**

**State of Alabama**

**Appeal from Montgomery Circuit Court**
**(CC-21-527.70)**

COLE, Judge.

Anteaus Ockzavia Glenn appeals the Montgomery Circuit Court's order revoking his probation based on his commission of various new offenses and his failure to abide by the conditions of probation. We reverse and remand.

Facts and Procedural History

Glenn was convicted of second-degree criminal mischief, a violation of § 13A-7-22, Ala. Code 1975. He was sentenced to one year of imprisonment, which was suspended for Glenn to serve one year of supervised probation. On May 17, 2023, Officer Nayati McLemore, with the Alabama Bureau of Pardons and Paroles ("ABPP"), filed a delinquency report with the circuit court alleging that Glenn had violated the conditions of his probation by absconding. Subsequently, on December 2, 2024, Officer Jonathan Brumlow, with the ABPP, filed a supplemental delinquency report with the circuit court alleging that Glenn had violated his probation by "possess[ing], receiv[ing], or transport[ing] firearms," a technical violation, and for committing six new offenses: domestic violence by strangulation or suffocation, a violation of § 13A-6-138, Ala. Code 1975; two counts of felony third-degree domestic violence (third-degree assault), violations of § 13A-6-132, Ala. Code 1975; first-degree theft of property, a violation of § 13A-8-3, Ala. Code 1975; second-degree theft of property, a violation of § 13A-8-4, Ala.

Code 1975; and third-degree domestic violence (menacing), a violation of § 13A-6-132, Ala. Code 1975.

On December 18, 2024, the circuit court held a probation-revocation hearing. Off. Brumlow testified that he was not Glenn's original probation officer and authenticated a copy of the conditions of probation. As to the technical violation of possessing, receiving, or transporting a firearm, Off. Brumlow testified that he had charged Glenn with the violation based on his commission of the new offense of third-degree domestic violence (menacing).[1] Off. Brumlow agreed that he did not have any personal knowledge of Glenn's absconding or of any of his newly charged offenses. (R. 11-12.)

Sergeant K.A. Nunn, with the Montgomery Police Department ("MPD"), testified that Geraldine Miller went to the MPD and reported that, on July 11, 2023, she had been "physically assault[ed]" by Glenn. (R. 13-14.) Sgt. Nunn observed that Miller had "a black eye," "minor scratches to her neck," and "like a bruise" on her arm. (R. 14-15.)

---

[1]We note that the supplemental delinquency report indicates that the technical violation of possessing, receiving, or transporting a firearm was related to "Charge 4," which is the charge of first-degree theft of property. (C. 20-21.)

3

Photographs of Miller's injuries were introduced into evidence. Sgt. Nunn testified that she learned, before the hearing, that Miller had written a "letter saying that the incident did not occur." (R. 17.) Sgt. Nunn agreed that she had no personal knowledge of the incident other than what Miller had told her.

Corporal T.H. Hawkins, with the MPD, investigated another domestic-violence incident involving Preinsha Grice and Glenn. During an interview about a different matter with Grice at MPD, Grice alleged that, on April 1, 2024, she had gotten into a "verbal altercation which turned physical" with Glenn. (R. 20-21.) Grice "sustained bruises to her left and right arm[s] as well as her chest," which Cpl. Hawkins observed and photographed. (R. 21.) Grice alleged that, during the altercation, Glenn had produced a firearm and threatened her life. After the altercation, Glenn left with Grice's vehicle and her firearm. Grice told Cpl. Hawkins that she did not give Glenn permission to use her vehicle. The following day Glenn and Grice "exchange[d] through text messages" that Grice wanted her firearm back, and Glenn "replied, I sold it for $150." (R. 24.) Grice forwarded screenshots of those messages to Cpl. Hawkins. Grice also told Cpl. Hawkins that another altercation occurred

4

the next day, during which Glenn "threw [Grice] on the floor." (R. 24-25.) According to Grice, when Glenn proceeded to Grice's vehicle, "because [Glenn] had told [Grice] that her gun [was] inside the car, [Grice] thought that [Glenn] was grabbing for the firearm, so in defense, [Grice] shot [Glenn]." (R. 25.)

During Cpl. Hawkins's testimony, the State introduced into evidence a copy of an emailed screenshot of the alleged text conversation between Glenn and Grice. Glenn objected to the text conversation based on "a lack of personal knowledge" and "a lack of foundation" to determine that the messages were authentic. (R. 27-28.) The circuit court admitted the text conversation over Glenn's objection. In discussing the text messages, the State and Cpl. Hawkins identified the messages as coming from either the "owner of the phone" or the "recipient." (R. 29.) One of the messages read: "I just sold your gun for the 150." (R. 29.) There was no testimony indicating that Glenn was the "recipient." Cpl. Hawkins agreed, on cross-examination, that he lacked any personal knowledge of the facts and was relying only on what Grice had told him.

Glenn argued that the circuit court could not revoke his probation because the State's evidence was solely hearsay. The State argued that

5

the "photographs" were not hearsay and that the photographs "corroborated" the hearsay statements. The State also argued that Off. McLemore's delinquency report was "part of the record" because it had been filed with the circuit court and, therefore, could be considered in revoking Glenn's probation. (R. 39-40.) Glenn argued that the photographs did not cure the hearsay problem because they did not connect Glenn to Miller's and Grice's injuries. The circuit court took the case under advisement and subsequently issued a written order revoking Glenn's probation. This appeal follows.

Discussion

On appeal, Glenn's sole argument is that the circuit court erred in revoking his probation because, he asserts, the State's evidence was entirely hearsay evidence. (Glenn's brief, pp. 9-14.) The State concedes that it failed to present sufficient nonhearsay evidence to connect Glenn to the charged violations to support revoking his probation. (State's brief, pp. 12-15.) We agree.

> "In Corbitt v. State, 369 So. 3d 682 (Ala. Crim. App. 2022), this Court stated:
>
>> "'"It is well settled that hearsay evidence may not form the sole basis for revoking an individual's probation." Goodgain v. State, 755 So.

6

2d 591, 592 (Ala. Crim. App. 1999) (citing Clayton v. State, 669 So. 2d 220 (Ala. Crim. App. 1995)). However, "hearsay evidence is admissible in a revocation proceeding," Beckham v. State, 872 So. 2d 208, 211 (Ala. Crim. App. 2003), and a combination of both hearsay and nonhearsay evidence may be sufficient to warrant revocation. See, e.g., Askew v. State, 197 So. 3d 547, 548-49 (Ala. Crim. App. 2015). "[W]hen the State presents a mixture of hearsay and nonhearsay evidence to show that a defendant violated his probation by committing a new offense, the circuit court cannot revoke a defendant's probation for that violation unless the nonhearsay evidence connects the defendant to the alleged offense." Walker v. State, 294 So. 3d 825, 832 (Ala. Crim. App. 2019) (emphasis in original).'

"369 So. 3d at 685."

McCary v. State, 385 So. 3d 584, 586 (Ala. Crim. App. 2023).

## I.

Although Off. Brumlow testified that Off. McLemore filed a delinquency report alleging that Glenn had absconded and that he subsequently filed a supplemental delinquency report alleging that Glenn had possessed, received, or transported a firearm, Off. Brumlow had no personal knowledge of Glenn's alleged violations.

It is unclear whether the circuit court found the evidence sufficient to revoke Glenn's probation based on the charges of absconding and

7

possessing, receiving, or transporting a firearm.[2] To the extent that the circuit court might have revoked Glenn's probation on those grounds, the State's evidence was insufficient to support the revocation. The State's sole witness on the charge of absconding was Off. Brumlow, who agreed that he had never met Glenn and that his knowledge of Glenn's absconding was gleaned "secondhand" from Off. McLemore's delinquency report and ABPP records. (R. 6-7, 9-12.) That evidence was insufficient for the circuit court to revoke Glenn's probation based on absconding. See, e.g., Fitts v. State, [Ms. CR-2024-0283, Mar. 28, 2025] __ So. 3d __ , __ (Ala. Crim. App. 2025) (holding that "the State did not present any nonhearsay evidence" to support absconding when the evidence was "based … on the delinquency report and records entered" by a previous probation officer who did not testify at the hearing).

Moreover, Off. Brumlow testified that his allegation of Glenn's having possessed, received, or transported a firearm was based upon

---

[2]The circuit court did not specifically make a finding that Glenn absconded or possessed, received, or transported a firearm in its written order, which was a form probation-revocation order; however, it did check a box on the probation-revocation order noting that it found that Glenn had violated the conditions of his probation, which included, among other things, that he report and that he comply with the court's orders. (C. 38.)

Glenn's charged new offenses. In fact, Off. Brumlow charged that offense solely "from the complaint" filed against Glenn; thus, Off. Brumlow lacked personal knowledge of the offense. (R. 10.) For the reasons expressed more fully in Part II of this opinion, there was insufficient nonhearsay evidence to connect Glenn to the possession, receipt, or transportation of a firearm. See, e.g., Marks v. State, 199 So. 3d 827, 829 (Ala. Crim. App. 2016) (holding that the evidence was insufficient to revoke probation for technical violations because the evidence was based upon a report of which the probation officer had no personal knowledge).

## II.

Sgt. Nunn and Cpl. Hawkins both testified to two incidents involving Miller and Grice, respectively. The supplemental delinquency report shows that Miller was the alleged victim of domestic violence by strangulation or suffocation and felony third-degree domestic violence (third-degree assault) and that Grice was the alleged victim of felony third-degree domestic violence (third-degree assault), first-degree theft of property, second-degree theft of property, and third-degree domestic violence (menacing).

Sgt. Nunn testified that she had observed injuries to Miller, but she conceded that her knowledge of the offenses was based solely on what Miller had told her. Although Sgt. Nunn personally observed Miller's injuries, those injuries did not <u>connect</u> Glenn to the offenses. <u>See, e.g.</u>, <u>Weatherford v. State</u>, 251 So. 3d 70, 74 (Ala. Crim. App. 2017) ("Although Inv. Gilbert testified that he had seen the victim's injuries, no nonhearsay evidence was presented indicating that Weatherford caused those particular injuries."). Moreover, Sgt. Nunn conceded that her knowledge of the offenses was based solely on what Miller had told her, which is hearsay evidence. <u>See, e.g.</u>, <u>Vaughn v. State</u>, 37 So. 3d 183, 186 (Ala. Crim. App. 2009) ("Testimony from Officer Schultz regarding what the victim told him constituted hearsay …."). Miller did <u>not</u> testify at the probation-revocation hearing. Thus, the State failed to present sufficient nonhearsay evidence to connect Glenn to the offenses of domestic violence by strangulation or suffocation and felony third-degree domestic violence (third-degree assault) against Miller.

Likewise, Cpl. Hawkins testified that he had observed injuries to Grice, but he conceded that his knowledge of the offenses was based solely on what Grice had told him. Grice did <u>not</u> testify at the probation-

revocation hearing. For the same reasons that the evidence was insufficient to connect Glenn to the offenses involving Miller, the evidence was insufficient to connect Glenn to the offenses of felony third-degree domestic violence (third-degree assault), first-degree theft of property, second-degree theft of property, and third-degree domestic violence (menacing) against Grice.

The closest thing to nonhearsay evidence connecting Glenn to any of the new offenses that the State introduced was the alleged text-message exchange between Grice and Glenn. See Rule 801(d)(2), Ala. R. Evid. (defining an opponent-party statement as nonhearsay evidence). However, Glenn objected to the text-message exchange based on a "lack of foundation" and "lack of personal knowledge" to show that the messages were authentic. (R. 28-29.) Although Cpl. Hawkins testified that the messages were an exchange between Grice and Glenn, Cpl. Hawkins lacked any personal knowledge that any message was, in fact, Glenn's statement; Grice's telling Cpl. Hawkins that certain messages were from Glenn is, thus, hearsay evidence. See, e.g., Spradley v. State, 128 So. 3d 774, 783-87 (Ala. Crim. App. 2011) (holding that testimony from officers regarding facts not within their personal knowledge but

11

learned through the statement of another was hearsay evidence). Generally, the State would not be required to authenticate evidence at a probation-revocation hearing because a trial court is "'"'not bound by strict rules of evidence'"'"' in a probation-revocation hearing. See, e.g., Singleton v. State, 209 So. 3d 529, 533 (Ala. Crim. App. 2015) (citations omitted). Here, however, the State could show that the text messages were "nonhearsay evidence" only by showing that the messages were actually from Glenn, a party opponent. See Rule 801(d)(2), Ala. R. Evid. Thus, the State could present sufficient nonhearsay evidence to support the revocation of Glenn's probation only by authenticating the text messages. However, the State did not introduce any evidence to show that the text messages were, in fact, Glenn's messages. In sum, based on this record and as the State now concedes, the prosecution failed to provide sufficient nonhearsay evidence to connect Glenn to any of the alleged new offenses. See McCary, 385 So. 3d at 586 (holding that the State must present sufficient nonhearsay evidence connecting the probationer to the alleged new offense to support revoking probation).

We hold that the State failed to present sufficient evidence connecting Glenn to the various newly charged offenses, absconding, or

12

"possessing, receiving, or transporting a firearm" to support revoking his probation.

Conclusion

For these reasons, the circuit court's judgment revoking Glenn's probation is reversed, and this cause is remanded to the circuit court for further proceedings consistent with this opinion.

REVERSED AND REMANDED.

Windom, P.J., and Kellum, Minor, and Anderson, JJ., concur.